**Benjamin BRAGER and Irma Brager**

v.

**Herschel BLUM and Helene Blum and Johanna Farms, Inc.**

Civ. A. No. 84–2655.

United States District Court,
E.D. Pennsylvania.

May 28, 1985.

Joseph S.U. Bodoff, Philadelphia, Pa., for plaintiffs.

Jay G. Ochroch, James J. Gillespie, Jr., Philadelphia, Pa., for Herschel and Helene Blum.

Barbara H. Sagar, Philadelphia, Pa., for Johanna Farms, Inc.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is an appeal from a final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. For the reasons stated herein, the final order of the bankruptcy court will be affirmed.

## I. FACTS

The parties have stipulated to the facts.

On July 6, 1981, Benjamin and Irma Brager filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code ("Code"). On that date, the value of the Brager's residence is stipulated to have been $60,000.00. Pursuant to § 522 of the Code, the Bragers claimed their exemption which is valued at $7,055.00. In addition, there were liens against the residential property which aggregated $451,862.66. Those liens were as follows:

1. The Philadelphia Savings Fund Society ("PSFS") held the first mortgage, recorded in 1963. The outstanding debt owed by the Bragers to PSFS was $7,000.00.

2. American Bank and Trust Company of Pennsylvania ("American Bank") held an $80,000.00 judgment lien against the Bragers and Peter and Claire Cardamone, Sr. ("the Cardamones, Sr."), all jointly liable. This judgment was obtained in June, 1979.

3. Herschel and Helene Blum had a judgment lien, by stipulation of the parties, obtained in August, 1979, and November, 1980, in the amount of $286,395.84.

4. Two other liens, neither of which is important to this appeal, rounded out the balance of the liens on the Brager's residence.[1]

Two transactions occurred, subsequent to the filing of the Chapter 13 bankruptcy petition, whereby the judgment lien against the Bragers and the Cardamones, Sr. held by American Bank became assigned first to A-1 Discount Company ("A-1 Discount") and then to Peter Cardamone, Jr.

The first transaction, occurring on or before September 22, 1981, took place as follows. A-1 Discount loaned $35,000.00 to 43 East, Inc. ("43 East"), which was a bar solely owned by Cardamone, Jr. and was housed in the Cardamones, Sr.'s residence. 43 East then loaned the proceeds to Cardamone, Jr., who deposited them into an escrow account, which was opened by the law firm of Pincus, Verlin, Hahn, Reich & Goldstein ("the Pincus firm"). Cardamone, Jr.'s grandmother ("grandmother") deposited an additional amount of approximately $40,000.00 into the escrow account, which brought the escrow account to a level sufficient to satisfy the Brager's outstanding debt to American Bank. On September 22, 1981, the Pincus firm drew a check on the escrow account (to the order of American

---

1. Johanna Farms, Inc. held a mortgage lien, recorded in September, 1980, the outstanding balance being in the amount of $25,000.00.

Frankford Quaker Co. was a judgment lien creditor, a status obtained in December, 1980, in the amount of $53,466.82.

Bank) in the sum of approximately $75,-000.00. Principal and interest on the Brager's outstanding debt to American Bank was paid, although some expenses of American Bank remained outstanding. In return for its loan to Cardamone, Jr., A–1 Discount was assigned American Bank's lien position on the Brager residence by American Bank and received liens on 43 East's personalty and on the residence of the Cardamones, Sr.

Prior to the second transaction, on March 24, 1982, the Brager's Chapter 13 proceeding was converted to a Chapter 7 proceeding. On June 7, 1982, concerned with the transaction of September, 1981, (the A–1 Discount loan to Cardamone, Jr. and the creation of the escrow account) the bankrupt estate filed a complaint for determination of the lien status under § 506(a). The Blums moved to dismiss the complaint. The bankruptcy court denied the motion on April 20, 1983. 28 B.R. 966. Subsequently, the Blums filed an answer to the complaint.

On December 14, 1982, the second important transaction occurred. On that date, the personalty of 43 East and the residence of the Cardamones, Sr. were sold to a third party. A–1 Discount, at the settlement, received $30,800.00, which constituted a final settlement of the September, 1981, debt owed by Cardamone, Jr. to A–1 Discount. In exchange for this payment, A–1 Discount assigned its lien it had received in assignment from the American Bank in the Brager residence and the residence of the Cardamones, Sr. to Cardamone, Jr.

Hearings before the bankruptcy court took place on December 7 and December 21, 1983. Testimony was taken. On April 19, 1984, the bankruptcy court rendered its decision in which the court held that both assignments were valid and that the Blums' lien, which was valued at the time of the filing of the bankruptcy petition at zero, was voided. 39 B.R. 441.

On appeal to this court, the Blums argue that (1) the bankruptcy court's conclusion that funds were advanced by 43 East and the grandmother with the intent that the American Bank judgment lien be assigned to A–1 Discount was unsupported by any evidence, and (2) the American Bank judgment lost its priority position and became subordinate to the Blums' lien because either or both of the September, 1981 and December, 1982 transfers involving the American Bank judgment were invalid. The transfers were defective, the Blums argue, because (1) no consideration supported the second assignment of the judgment to Cardamone, Jr., and (2) at the first transfer, A–1 Discount took the judgment note, and 43 East and the grandmother took the right to demand payment of the debt.

## II. DISCUSSION

■ The district court, reviewing a core [2] issue of a bankruptcy court decision, ap-

---

**2.** "Core" proceedings are described in 28 U.S.C. § 157(b)(2), which reads as follows:

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmation of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

plies a "clearly erroneous" standard. Bankruptcy Rule 8013. The bankruptcy court's findings of facts will not be disturbed unless the court is left with a definite and firm conviction that a mistake has been committed. *See United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Pennsylvania distinguishes between equitable and legal assignments. A legal assignment is "a transfer or setting over of property or of some right, or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing." *In re Purman's Estate,* 358 Pa. 187, 190, 56 A.2d 86, 88 (1948). To effect a legal assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights. *Melnick v. Pennsylvania Company for Banking and Trusts,* 180 Pa.Super. 441, 119 A.2d 825 (Pa.Super.Ct.1956). An equitable assignment, on the other hand, is "any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment." *In re Purman's Estate,* 358 Pa. 187, 190, 56 A.2d 86, 88 (1948).

Consideration is required to support a promise to assign, *see In re Estate of Musselman,* 494 Pa. 571, 431 A.2d 1002 (1981), but the lack of consideration does not make an assignment invalid. *Ertel v. McCloskey,* 167 Pa.Super. 120, 74 A.2d 652 (Pa.Super.Ct.1950). An assignment made without consideration is revocable, however, unless a writing or delivery of some item evidences its irrevocability. *See First National Bank v. Ladd,* 126 Pa. 188, 17 A. 750 (1889). An assignment made for consideration is irrevocable.

1. Turning to the present case, the court construes appellant's argument as follows: the grandmother and 43 East paid

Brager's outstanding debt to the bank and thereby purchased the debt from the bank. Then, according to appellant, because appellees failed to show that the grandmother and 43 East intended to assign the debt to A–1 Discount, the assignment of the judgment by the bank to A–1 Discount must be found to be defective and void.

As *Melnick, supra,* and *Purman's Estate, supra,* illustrate, the intent element is satisfied if the appropriate assignor had the present intent to assign the debt. Appellant does not contest that at the time of the first assignment, American Bank intended to assign the judgment to A–1 Discount. Instead, appellant alleges that American Bank was not an appropriate assignor at the time of the assignment.

The appropriate assignor is the individual who owns the debt at the time of the assignment. *Ertel v. McCloskey,* 167 Pa. Super. at 124, 74 A.2d at 654. In *Ertel v. McCloskey,* the Supreme Court of Pennsylvania upheld an assignment of a claim for rent executed by assignor to assignee prior to pay-off of assignor by a third party. The court said in pertinent part:

> The court below refused recovery, holding that payment of a debt by the third party, accepted by the creditor, relieves the debtor of further obligation to the creditor. It held that "on August 14, 1944, the Drake [Hotel] had nothing to assign, its claim having been paid off on August 9th; that plaintiff therefore took nothing by the purported assignment and cannot maintain that present action against defendant." It is not particularly material, but actually Drake was not "paid off" on August 9th; it did not release the furniture until after Frey's check cleared the banks. But even so, on August 9th Drake effectually assigned its claim to Ertel by words in praesenti. It did not, as the court held, agree to assign; it actually assigned on that date. If the agent who executed the August

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

9th assignment was authorized to sign on behalf of Drake, that assignment was as valid as against McCloskey as the second assignment executed formally by the corporate officers.

167 Pa.Super. at 124, 74 A.2d at 654.

In the present case, American Bank executed the assignment to A–1 Discount simultaneously with receipt of the Pincus firm check. Since the execution of the assignment and the receipt of the check occurred in a single transaction, this court finds that it is not particularly material whether or not the execution of the assignment occurred moments after the exchange of the check. American Bank must have had the capacity at the time of the September 22, 1981 transaction to assign the judgment to A–1 Discount, 43 East, the grandmother, or to any other appropriate assignee. In other words, American Bank must have been the appropriate assignor.

As American Bank, and not the grandmother or 43 East, was the appropriate assignor and American Bank exhibited the prerequisite present intent to assign the judgment, the court holds that the first assignment was valid.

2. Appellant argues that the second assignment from A–1 Discount to Cardamone, Jr. on December 14, 1982 is invalid because it lacked consideration. As discussed above, consideration is not a required element to make an assignment valid. It should be noted that appellant does not allege that the second assignment was revocable or was revoked. Consequently, the court holds that the second assignment is valid.[3]

## III.  CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court will be affirmed.

---

**3.** Even if Pennsylvania required that an assignment of a judgment lien on real estate be supported by consideration, the court believes that Cardamone, Jr. gave consideration in exchange for the assignment. Furthermore, appellant does not indicate that appellant was defrauded by the assignment to Cardamone, Jr. *See In re Greenebaum Bros. & Co.,* 62 F.Supp. 769, 773 (E.D.Pa.1945).