**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Alfred STELWECK and Irwin Stelweck,
Defendants–Appellees.**

Civ. A. No. 88–5320.

United States District Court,
E.D. Pennsylvania.

Dec. 11, 1989.

Catherine Votaw, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff-appellant.

Jerome Verlin, Philadelphia, Pa., for defendants-appellees.

Steven Usdin, Philadelphia, Pa., for trustee.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

The present case comes as an appeal from a final order of the bankruptcy court. This court has jurisdiction to hear such appeals pursuant to 28 U.S.C. § 158(a), and Bankruptcy Rule 8001. For the reasons stated below, I affirm the decision of the bankruptcy judge.

### Introduction

Alfred and Irwin Stelweck are two of the officers and owners of E & S Comfort, Inc. (E & S). E & S Comfort was a distributor of seat-lift chairs. On December 19, 1985, certain creditors of E & S filed an involuntary petition under Chapter 11 of the Bankruptcy Code (Bk. No. 85–05474K). Irwin and Roberta Stelweck and Alfred and Agnes Stelweck filed Chapter 7 petitions in the United States Bankruptcy Court for the Eastern District of Pennsylvania on March 24, 1986. The United States of America (United States or appellant) filed adversary proceedings against both Irwin and Alfred Stelweck (the Stelwecks or appellees) on May 30, 1986.

The United States in its adversary proceeding against the Stelwecks alleged that the Stelwecks submitted fraudulent claims for their seat-lift chairs to Medicare. Specifically, the United States alleged that E & S was improperly altering forms filled out by doctors seeking to obtain Medicare reimbursement for their patients. The United States asked the bankruptcy court to declare the financial obligations of the Stelwecks to the government non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(A), (6) and (7) and to impose damages for the Stelwecks alleged fraud, including penalties under the federal False Claims Act.

The bankruptcy court decided that it could determine whether the unliquidated debts are dischargeable, then held that the record did not support a finding that the debts are non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6) and further held that 11 U.S.C. § 523(a)(7) does not embrace claims brought under the federal False Claims Act, 31 U.S.C. § 3729, et seq., because False Claim Act claims are in the nature of compensation, not punishment.

In its appeal, the United States asks for resolution of the following issues:

1. Whether the bankruptcy court erred in holding that the United States must establish by clear and convincing evidence its claim that a debt owed under the False Claims Act is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), covering certain debts for money obtained by false pretenses, a false representation, or actual fraud.

2. Whether the bankruptcy court erred in its conclusion of law that the United States did not establish by clear and convincing evidence that the additions typed at the Stelwecks' direction to the Certificates of Medical Necessity already signed by the doctors were not false, or that the Stelwecks did not make those additions with the intent to deceive the Medicare program.

3. Whether the bankruptcy court erred in ruling that the United States did not establish that the Stelwecks' debt constitutes a willful and malicious injury which is non-dischargeable under 11 U.S.C. § 523(a)(6).

4. Whether the bankruptcy court erred in ruling that the entire debt claimed by the United States under the False Claims Act is discharged, including statutorily mandated treble damages and penalties, under 11 U.S.C. § 523(a)(7), which prohibits discharge of debts to the extent that they are fines, penalties or forfeitures

payable to the government not in compensation for actual pecuniary loss.

5. Whether the United States is entitled to judgment in its favor under the False Claims Act and common law on the record developed before the bankruptcy court.

*The Bankruptcy Court's Findings of Fact*

The findings of fact by the bankruptcy court are reviewable only for clear error. *In re Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988); *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). The findings of fact will not be disturbed unless I am left with a definite and firm conviction that a mistake has been made by the bankruptcy court. *Brager v. Blum*, 49 B.R. 626 (E.D.Pa.1985); *In re Philadelphia Consumer Discount Co.*, 37 B.R. 946 (E.D.Pa.1984). Moreover, I must give due regard to the Bankruptcy Court's opportunity to judge the credibility of witnesses. *In re Neshaminy Office Building Associates*, 62 B.R. 798 (E.D.Pa. 1986). Limiting the district court to a review of the bankruptcy court's finding under the clearly erroneous standard is appropriate because a duplication of the bankruptcy court's efforts is unlikely to contribute significantly to the accuracy of fact determinations and is not an efficient use of judicial resources. *In re Branding Iron Motel*, 798 F.2d 396, 400 (10th Cir.1986). The clearly erroneous standard, however, does not apply to the Bankruptcy Court's conclusions of law which I must review de novo. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986); *Universal Minerals v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

Bankruptcy Judge Scholl's findings of fact are set forth in paragraphs 1 through 74 of his decision. *In re Stelweck*, 86 B.R. 833, 835–43 (Bkrtcy.E.D.Pa.1988). The judge's findings of fact were thorough and meticulously outlined. They show an extreme attention to the details involved in this litigation. I find it is not necessary to repeat them here. A summary of the essential facts shows the following.

E & S sold and distributed seat-lift chairs from May 1984 until January 1986. Its main source of income was reimbursement from Medicare for seat-lift chairs sold to Medicare recipients. The Medicare program is administered by the Health Care Financing Administration (HCFA), an agency of the United States Department of Health and Human Services (HHS). Pennsylvania Blue Shield (Blue Shield) processed the seat-lift chair claims under a contract it had with the government.

When prospective customers placed orders with E & S, they were sent a Medicare Claim form (Form HCFA–1500A). At the same time, E & S sent a form letter to the customer's physician requesting they complete a Certificate of Medical Necessity (CMN) form. Both forms were provided by Blue Shield which required both be submitted with each claim. *Id.* at 836. In this litigation, each of the contested forms was signed by Eileen Cohen, the president of E & S, or one of the Stelwecks as suppliers of medical services. In addition, each form was signed by the beneficiary's attending physician.

During the period the contested claims were submitted, there were three different sets of standards for determining whether a seat-lift chair qualified for Medicare reimbursement. These were the Medicare Coverage Issues Appendix for seat-lift chairs; the Medicare Claims Payment Decision Logic Table for seat-lift chairs; and the Typical Diagnosis List for a seat-lift chair. *Id.* at 836–37.

Many of the claims initially submitted by E & S were denied by Blue Shield because they did not meet any of the diagnoses listed on the Logic Table. When Cohen had a question regarding a claim that was denied, she contacted Jill C. Shaffer (Shaffer), a telephone customer service representative with Blue Shield. During their conversations, Cohen and Shaffer discussed how to properly complete the forms and also discussed claims that had been denied. Shaffer testified that she told Cohen there were two ways to "correct" a CMN, either contact the physician by telephone and add information to the CMN or send the physi-

cian a new, blank CMN to be completed. *Id.* at 837.

The bankruptcy judge found that Cohen believed that in order for a claim involving a diagnosis of arthritis to be approved by Blue Shield, it had to include the "magic language" relating specifically to severe arthritis of the hip or knee with hip and/or knee involvement. According to Cohen, she was advised by Shaffer to add "hip and knee involvement" to claims involving arthritis in order to be paid. Also, according to Cohen, she was *not* advised that it had to be noted on the CMN that the addition or change was authorized by the physician. The judge found that Cohen's testimony regarding her understanding of Shaffer's directions, even though it may have been mistaken, was both credible and truthful. *Id.* at 838.

Almost all of the disputed claims admitted into evidence contained typing on the CMN that was added by employees of E & S at the direction of either the Stelwecks or Cohen. The typed additions were made after the CMN was returned to the company by the beneficiary's physician. All of the disputed claims at issue were approved and paid by Blue Shield.

When processing a seat-lift chair Medicare claim, the Blue Shield claims processors checked to make sure that the claim was accompanied by a CMN signed by a physician and that the diagnosis matched one contained in the Logic Table. If both conditions were met, the claim was approved. All of the contested claims were accompanied by completed CMN's wherein the beneficiary's treating physician certified that the seat-lift chair was necessary for the health of their patient. There was no allegation and no showing that any of the CMN's were forged. Therefore, Judge

Scholl concluded that none of the CMN's were forged. *Id.* at 839–40.

In or about August, 1985, HCFA requested that Blue Shield take extra precautions in paying seat-lift claims because it appeared that suppliers were using standardized language on physician's certificates. All reimbursement for claims submitted by E & S were withheld after November 27, 1985, and the monies owed to E & S were placed in an escrow account. The disputed claims were all paid by Medicare before November, 1985. As a result of the loss of Medicare reimbursement, an involuntary bankruptcy petition was filed in the Bankruptcy Court for Eastern District of Pennsylvania against E & S. A Trustee was appointed on January 2, 1986.[1] *Id.* at 840.

Robert Taylor (Taylor), a program analyst with HHS, Office of Inspector General, conducted an investigation into possible overutilization or abuse by E & S in providing seat-lift chairs to Medicare recipients. He was called at the bankruptcy trial to testify on behalf of the Stelwecks.

Taylor testified that in May 1987, he prepared the results of a survey of thirty to thirty-five of the seven hundred and eighty-nine beneficiaries in issue who had purchased seat-lift chairs from E & S. Taylor testified that, during his investigation, he observed at least three beneficiaries engaged in activities which led him to conclude that the person did not need a seat-lift chair. However, every doctor contacted indicated that he or she had prescribed the seat-lift chair, although one doctor indicated that he had done it simply as a favor to his patient. None of the doctors indicated that their signatures on the CMN's had been forged. *Id.* at 840–41.

---

1. The Trustee in the Chapter 11 case of E & S filed an adversary complaint (Adv. No. 86–0197S) against HCFA and Blue Shield to compel the turnover of the funds being held in escrow by Blue Shield for the claims submitted by E & S. HCFA filed an Answer and Counterclaim (Adv. No. 87–0431S), alleging that it was entitled to an offset against any funds which may be due E & S and sought damages against E & S for alleged fraud on the part of the Debtor under the federal False Claims Act, 31 U.S.C.

§ 3729(a). The Stipulation of Settlement approved by the bankruptcy court on April 13, 1988 settling this dispute provided: (1) E & S had approximately 3,300 claims pending before Blue Shield; (2) the HCFA would pay the Trustee a million ($1,000,000.00) dollars in settlement of those claims; and (3) the disputed 789 claims previously submitted by E & S and paid by Blue Shield which are in issue in these proceedings were specifically exempted. *Id.*

Charles Arthur Tress (Tress) is the Manager of the Medicare Fair Hearing Office. At the request of Blue Shield, Tress reviewed 849 reimbursed claims to determine if they should have been based solely on the handwritten diagnosis on the CMN without considering any typewritten material on the form. In making these determinations, Tress used the Logic Table utilized by Blue Shield claims examiners. Tress testified that, of the 849 claims that he reviewed, only fifty-nine should have been paid based only on the handwritten diagnosis. *Id.* at 841.

The appellant called both Stelwecks to testify at the bankruptcy trial. Both appellees invoked their Fifth Amendment privilege and refused to answer any of the questions asked by the appellant's counsel. The appellees did not list the United States as a creditor on their Chapter 7 schedules. The appellant did not file a Proof of Claim in either of the appellees' bankruptcy cases. *Id.* at 843.

*The Bankruptcy Court's Conclusions of Law*

The United States contended, in the bankruptcy court and in its appeal, that pursuant to § 523 of the Bankruptcy Code the appellees, Irwin Stelweck and Alfred Stelweck's alleged debt to the government for false medicare claims should not be discharged. The exceptions to discharge under § 523 of the U.S. Bankruptcy Code provides in pertinent part as follows:

(a) A discharge under § 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a government.

The bankruptcy court consolidated the two adversary actions by the United States against the Stelwecks for purposes of trial. The trial took place on January 7 and 8, 1988. Bankruptcy Judge Scholl entered his opinion and order on May 26, 1988 finding that the appellees are entitled to a judgment in their favor. Judge Scholl reached the following conclusions of law:

1. A bankruptcy court may determine dischargeability of a claim which is not liquidated but will generally not make the determinations necessary to liquidate the claim itself, since the dischargeability [appellant] is expressing a desire not to make claim against the Debtor's estate.

2. The [appellant] failed to establish all of the prerequisites necessary to successfully maintain an action under § 523(a)(2)(A). In particular, it failed to establish, by the requisite clear and convincing evidence standard, that the typed additions to the CMN's were false or that they were made by the appellees with the purpose and intent of deceiving the Medicare Program.

3. Absent convincing independent evidence of these necessary elements of a cause under 11 U.S.C. § 523(a)(2)(A), the court will not impute these elements from the [appellees'] invocation of their Fifth Amendment privilege to not testify.

4. The [appellees'] debts to the [appellant] were not established to be non-dischargeable under 11 U.S.C. § 523(a)(6) because of the [appellant's] failure to prove that the [appellees] intended to effect a willful and malicious conversion upon the United States.

5. The penalty provisions of the federal False Claims Act are not within the scope of 11 U.S.C. § 523(a)(7). Rather, a claim under the False Claims Act is non-dischargeable only under § 523(a)(2)(A) or § 523(a)(6), where the requirements of those Code sections have been met.

6. The [appellant] has not proven that the debts in issue [are] dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(6), or (a)(7), and therefore the [appellees] are entitled to judgment in their favor.

In his May 26, 1989 Order, Judge Scholl decided that the obligations of the Stelwecks to the United States were dischargeable in their respective Chapter 7 petitions. *Id.* at 843–44.

*Discussion*

I. *The Bankruptcy Court Correctly Held That The United States Had To Establish By Clear and Convincing Evidence That A Debt Owed Under The False Claims Act Is Non-dischargeable Under 11 U.S.C. § 523(a)(2)(A)*

 In objecting to the dischargeability of a debt, the burden of proof is on the party seeking the exception to discharge. *In re Taylor,* 49 B.R. 849 (Bankr.E.D.Pa. 1985). The general purpose of Bankruptcy Code Section 11 U.S.C. § 523(a)(2)(A) is to prevent a debtor from retaining property obtained by fraud. *See* 11 U.S.C. § 523(a)(2)(A), 3 *Collier on Bankruptcy,* ¶ 523.08[1] at 523–39 (15th ed. 1989). The burden of proof for fraud or any of the other exceptions from discharge under § 523(a) of the Bankruptcy Code is not specifically stated in the Code. Of the six circuits that have commented on the burden of proof for fraud under § 523(a), five have applied a clear and convincing standard. *In re Garner,* 881 F.2d 579, 581–82 (8th Cir.1989); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1262 (11th Cir. 1988); *In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986); *In re Black,* 787 F.2d 503, 505 (10th Cir.1986); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423–24 (7th Cir.1985). Only one circuit has adopted the preponderance of the evidence standard. *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988). The Third Circuit has not yet ruled on this question.

Judge Scholl held the United States in this case to the higher standard. Scholl, consistent with his earlier opinions, held that the United States must prove by the clear and convincing evidence standard each of the following five elements:

(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Stelweck,* 86 B.R. at 846; *see also, In re Butler,* 86 B.R. 829, 830–31 (Bkrtcy.E.D. Pa.1988), (Scholl, J.), *In re Fitzgerald,* 73 B.R. 923, 926 (Bkrtcy.E.D.Pa.1987) (Scholl, J.). In addition, the judge found that a necessary element under § 523(a)(2)(A) is actual fraud rather than fraud merely implied in law. *In re Stelweck,* 86 B.R. at 846; *In re Butler,* 86 B.R. at 831.3; *Collier* ¶ 523.08[4] and [5] at 523–45 and 523–54.

Before reaching his final decision on the § 523(a)(2)(A) claim, Judge Scholl determined that several issues were not relevant to determine the dischargeability of the debt alleged in this case. They included:

—whether individual beneficiaries were able on occasion to sit and stand without the seat-lift chair;

—whether individual physicians prescribed the seat-lift chair as a favor to their patients; and

—whether any individual claim or group of claims was properly processed or paid.

*In re Stelweck,* 86 B.R. at 846.

I agree with Judge Scholl's conclusions that these issues are not relevant to reaching a decision on the dischargeability of the amount implicated by the disputed claims. Whether the Stelwecks knew that the typewritten information on the reimbursement claim forms was false and whether that information was added with the intention of and purpose of deceiving appellant are the relevant issues.

Judge Scholl concluded that the Stelwecks had at a minimum known the typed additions were made to the forms. He also concluded that the representations contained in the typed additions were material. *Id.* at 846–847. However, the judge found that with respect to each of the disputed claims the signatory physician did prescribe

the chair and did certify that the chair was necessary for his or her patient. *Id.* There was no evidence of forged physician signatures or handwriting. Judge Scholl declined to infer that the typed-on conditions were false; absent sufficient testimony or evidence to support that conclusion. Scholl concluded that the standardized language—"severe ____ with hip and knee involvement"—was motivated by a desire to comply with "the technical requirements of Blue Shield rather than a desire to circumvent those requirements." Moreover, he found that Cohen's failure to accompany the typed changes with a record that the changes were made in accordance with telephone instructions from the recipient's physician was the result of a misunderstanding and not intentional fraud. *Id.* at 848–49.

Although Blue Cross relied on the typed representations when determining whether to approve the claims and any losses were the proximate result of the typed additions, Judge Scholl found that the appellant's § 523(a)(2)(A) claim failed because the appellant did not prove that the typed additions were in fact false (element 2) and made with the purpose and intent of deceiving HHS (element 3). *Id.* at 847–48. Judge Scholl noted the absence of the following from the evidence presented by the United States at trial:

> No direct evidence that any of the typed additions were in fact false.
>
> No direct evidence that any beneficiaries did not have the diagnosis typed in on the certificate of medical necessity.
>
> No testimony by any physicians that his or her patient did not suffer from the arthritic condition typed onto their certificate.

Accordingly, it was held that appellant failed to sustain its burden of presenting clear and convincing evidence of fraud required to find a violation of the False Claims Act.[2] *Id.* at 849.

Appellant asserts that preponderance of evidence standard decided on by Congress when it passed the most recent enactment of the False Claims Act and not the Bankruptcy Code's more stringent "clear and convincing evidence" standard is appropriate for deciding this allegation. I am not convinced. Although there is some dispute regarding the appropriate standard in a § 523 proceeding, the majority of courts that have examined this issue have adopted the "clear and convincing" standard.

Moreover, the vast majority of bankruptcy courts have held that to warrant a discharge under § 523 the evidence must be "clear and convincing". *See* Ferriel, *The Preclusive Effect of State Court Decisions in Bankruptcy (First Installment)*, 58 Am.Bankr.L.J. 349, 362 (1984). Bankruptcy courts, faced with conflicting standards of proof by parties seeking summary judgment on the basis of prior state court judgments of fraud, require that the standard of proof employed in the state court proceedings be identical to the clear and convincing standard required in bankruptcy court. If the standards are not identical, the court will require the party seeking to have the judgment enforced prove the merits of their case under the bankruptcy court's more demanding "clear and convincing" standard before granting an exception from discharge. *In re Robert McClure*, 70 B.R. 955 (Bkrtcy.S.D.Cal. 1987). Judge Scholl's application of the clear and convincing standard in this case is affirmed.

II. *The Bankruptcy Court Was Correct To Find That the United States Did Not Establish By Clear And Convincing Evidence That The Typed Additions Were False Or That Those Additions Were Made With The Intent To Deceive The Medicare Program*

■ Although the United States asserts in its appeal that the bankruptcy court incorrectly held that it had to prove non-dischargeability of a False Claims Act debt by

---

**2.** The court refused to infer the requisite fraud from the Stelwecks' invocation of their Fifth Amendment privilege not to testify absent "sufficient independent evidence—besides the mere invocation of the privilege—upon which to base the negative inference." *Id.* at 850 (quoting *United States v. Local 560*, 780 F.2d 267, 292 n. 32 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986)).

clear and convincing evidence, it also contends that even if the clear and convincing standard applied, it has been met. Appellant asserts that it established each of the five elements for non-dischargeability for actual fraud or false representation. To support its position, appellant relies, as they did at trial, on the evidence that it was the Stelwecks or their employees at their direction (and not the doctors) who typed in the additional diagnostic information on the certificate of medical necessity. Unfortunately for appellant, the evidence not presented at trial was fatal to their adversary action. Sufficient evidence was not presented to establish—by testimony of either the doctors or recipients—that the recipients did *not* suffer from a qualifying ailment or condition and therefore as a result of the supplier's action Medicare wrongfully compensated E & S for the 789 disputed seat-lift claims.

As an exception to discharge, § 523(a)(2)(A) is narrowly construed against the creditor or objecting party and in favor of the debtor. This strict construction is in recognition of the Bankruptcy Code's strong policy to provide the debtor with a financial fresh start. Section 523(a)(2)(A) is designed to render debts arising from conduct involving "moral turpitude or intentional wrong" non-dischargeable. *In re Paolino*, 75 B.R. 641, 646 (Bkrtcy.E.D.Pa.1987) (quoting *In re Gelfand*, 47 B.R. 876 (Bkrtcy.E.D.Pa.1985)).

As discussed earlier, the bankruptcy court declined appellant's request for a declaration of non-dischargeability for the 789 disputed claims because appellant failed to present direct evidence that the typed additions were false and/or made with the intent to deceive the Medicare program. In its appeal, appellant repeats the evidence presented to the bankruptcy court, i.e.,

—that the additional typed information was done without consulting the doctors, after the doctors had completed and signed the certificates;

—that the doctors did not understand the nature of the equipment they were trying to get from Medicare;

—that Robert Taylor's investigation for the Office of Inspector General of HHS revealed that several of the recipients of seat-lift chairs were capable of getting up and down;

—that the Stelwecks invoked their Fifth Amendment rights not to incriminate themselves in response to all questions asked at the trial; and

—without the additional typed information, none of the claims would have been paid by Blue Shield.

Appellant asserts that this evidence "compels the finding that the Stelwecks knew the representations were false and made them to defraud the government." Brief For Appellant at 22.

Judge Scholl agreed that there was evidence presented to show that typed additions were made to the 789 disputed claims and without the additional information these claims would not have been paid. The judge found, however, that this fact alone was not sufficient to find the 789 reimbursements were fraudulently obtained. The appellant relies very heavily on Agent Taylor's study and testimony. Notwithstanding appellant's judgment regarding the evidentiary value of Taylor's study and testimony, my review revealed that Taylor's study and testimony did not provide the compelling proof appellant claims.

Taylor was called to testify by the appellees in their case. Taylor testified that he interviewed 30 to 35 beneficiaries (Tr.1/8,26) and in that sample he observed one seat-lift recipient come "upstairs from the basement;" another "going to bowling" and a third "down the street [from his home] sitting on the steps [who said] he had nothing wrong with him." (Tr. 1/8,27). In addition, Taylor testified that he spoke with several doctors who told him that "the beneficiary was their patient and they more or less prescribed the chair as a favor" (Tr.1/8,28). Taylor was not able, however, on redirect examination to identify any doctor who told him that he prescribed the chair as a favor to their patient (Tr. 1/2,28–30) and he did not identify the three patients that he concluded did not need seat-

lift chairs (Tr. 1/8,30–31). Thus, Agent Taylor's testimony did not satisfy the requisite burden of proving by clear and convincing evidence (or the lower preponderance of the evidence standard) that the typed additions were in fact false.

Appellant also objects to Judge Scholl's crediting the testimony of Eileen Cohen, with respect to both the instructions received from Medicare and her telephone contacts with doctors. Absent sufficient evidence that Judge Scholl's decision to credit Cohen's testimony was clearly erroneous, I am not able to reverse his ruling.[3] On this issue of phone calls to signatory physicians, Judge Scholl specifically addressed appellant's argument that Cohen's testimony was not credible because it would have been impossible for her to telephone and reach the large number of doctors involved. In its appeal, appellant does not refute Judge Scholl's conclusion that each E & S principle would only have had to make 3–4 calls per day in order to contact a physician for each of the disputed paid and unpaid claims during the period the company was in business. Instead, appellant relied on the testimony of Ester Tuner, an E & S typist. Tuner testified that she processed 100–125 claims a day. Judge Scholl specifically concluded that Tuner's estimate was incredible and unsupported by the record. *In re Stelweck*, 86 B.R. at 842. Upon review of this record, I find that Judge Scholl's decision to credit the testimony of Cohen and discredit that of Tuner was not clearly erroneous, thus, I am not able to reverse his ruling. I do not find there was clear error in Judge Scholl's conclusion regarding the prospect that the confirming calls to physicians were made or his decision to credit the testimony of Cohen over that of Shaffer.

Moreover, given the state of the evidence presented at trial, I conclude that Bankruptcy Judge Scholl correctly concluded that appellant failed to meet its burden of proof and consequently, the United States is not entitled to an exception to dischargeability as permitted under 11 U.S.C. § 523(a)(2)(A).

III. *The Bankruptcy Court Did Not Err In Ruling That The United States Did Not Establish That The Stelwecks' Debt Constituted A Willful And Malicious Injury Non-dischargeable Under 11 U.S.C. § 523(a)(6)*

■ Appellant takes exception to Judge Scholl's holding that United States "failed to produce any direct evidence of the appellees' intent to effect a willful or malicious conversion upon the plaintiff" as required under § 523(a)(6). *Id.* at 851. Section 523(a)(6), like § 523(a)(2) and (4) reflects the policy of the Code that debts created by reprehensible conduct should not be discharged.

In order for a debt to be declared non-dischargeable under this section, the party seeking an exception must prove intent to cause an injury. *In re Lane*, 76 B.R. 1016, 1023 (Bankr.E.D.Pa.1987). The legislative history of § 523(a)(6) is clear. This section was intended to specifically overrule *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which applied a broader standard of "reckless disregard" in analyzing accusations of willful and malicious conversion in bankruptcy cases. *See* 3 Collier, § 523.16 at 523–119; U.S.Code Cong. & Ad.News 5787, 5963, 6320–21; Cong.Rec. 33,998.

Since I have affirmed Judge Scholl's finding that appellant failed to establish at the bankruptcy trial that the typed additions were false and made with the intent to defraud the Medicare program, I also affirm his conclusion that the United States failed to produce sufficient direct evidence of the appellees's intent to effect a willful

---

**3.** Bankruptcy rule 8013 provides:
On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

and malicious conversion to support a § 523(a)(6) exception.

## IV. *The Bankruptcy Court Correctly Decided That Appellants Failed To Prove Damages Under The False Claims Act And The Common Law*

■ Appellant asserts that it proved the necessary elements to establish liability under the False Claims Act. Appellant relies (in addition to the testimony of the E & S typists, agent Taylor and the typed additions to the forms themselves) on the testimony of Blue Cross manager Tress to establish its False Claims Act claim for damages. Tress testified that without the type written additions or "corrections," the 789 claims would not have been approved. The fact that the claims would not have been paid in the absence of the type written information is not sufficient to establish that every disputed claim was in fact fraudulent. Appellant had to establish at trial that the claims were false and submitted to defraud the government. Judge Scholl concluded the United States did not prove that the Stelwecks knew the representations were false or made with the purpose of defrauding the government. *In re Stelweck*, at 843.

In order for the bankruptcy court to assess a False Claims Act penalty against the Stelwecks, the government first had to prove the appellees' conduct violated the Act. Appellant, in the trial below, failed to present direct evidence that the Stelwecks knew the typed information constituted false information, as opposed to legitimate additions made after an E & S official contacted the physicians who signed the CMNs. No doctor was called as a witness for the appellant. Tress did not testify that any doctor denied being contacted by a representative of E & S subsequent to his or her initial submission of the certificate. No specific evidence was presented to prove that any individual identified on the 789 disputed claims was not entitled to the equipment provided. If the claims submitted were not fraudulent, there was no damage to the government.

In these circumstances, I find I will not reverse the conclusions reached by Judge Scholl with regard to the alleged False Claims Act damages owed to appellants. In the absence of direct evidence of fraud, breach of contract, unjust enrichment or payments under mistake of fact, I find that the Stelwecks are not liable to the United States under any of the common law theories asserted by appellant.

## V. *The Bankruptcy Court Correctly Ruled That The Entire Debt Under The False Claims Act Was Dischargeable*

Section 523(a)(7) of the Code specifically exempts from discharge certain fines, forfeitures and penalties payable to governmental units. *Kelly v. Robinson*, 479 U.S. 36, 41, 107 S.Ct. 353, 356–57, 93 L.Ed.2d 216 (1986). Judge Scholl concluded the False Claims Act was compensatory and therefore the civil remedies provided by the Act do not constitute a "fine, penalty or forfeiture" under 11 U.S.C. § 523(a)(7). Since the fine was imposed for compensatory reasons, Judge Scholl concluded it was dischargeable.

Appellant presents three arguments to support its appeal of the bankruptcy court's dismissal of its § 523(a)(7) claim. Appellant asserts the judge's decision: (1) violates the plain language of the Bankruptcy Code and False Claims Act; (2) ignores case precedent and (3) mischaracterized the False Claims Act in holding that the Act imposes its remedy for compensatory, not penal reasons. Appellant's arguments might provide a basis for appeal had the judge found a False Claims Act violation and then refused to declare it non-dischargeable. That did not happen in this case. Given my affirmance of Judge Scholl's conclusion that appellant failed to prove that the type written information on the disputed claims was false and made with the intent to defraud, the issue of whether the Stelwecks owed treble damages as a result of False Claims Act violations is not reached. Accordingly, I will affirm Judge Scholl's holding on the § 523(a)(7) exception.

*Conclusion*

Having affirmed the findings and holdings contained in the May 26, 1988 opinion by Bankruptcy Judge Scholl with respect to the issues on appeal, the appeal is denied.