**In re George Charles BRADY, III and Joan Kilkenny Brady.**

**William H. Michener, Jr. Individually and as Executor of the Estate of Margaret E. Quinn, Deceased.**

v.

**George Charles Brady, III and Joan Kilkenny Brady.**

**No. CIV.A.99–CV–4389.**

United States District Court, E.D. Pennsylvania, Philadelphia Division.

Jan. 13, 2000.

Charles J. King, Jr., Norristown, PA, for Plaintiff.

Robert Szwajkos, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

By this appeal, the appellant-debtors George C. Brady, III and his wife Joan Kilkenny Brady ask this Court to reverse the June 14, 1999 Opinion and Order of Bankruptcy Judge David A. Scholl granting plaintiff Michener's motion to amend his complaint naming the Pennsylvania Lawyer's Fund for Client Security ("Fund") as a plaintiff in the adversary action, finding the $15,000 claim of the Fund to be non-dischargeable as to both defendants and entering judgment in favor of plaintiffs with respect to that claim and declaring any and all claims which plaintiff Michener alone can establish in subsequent legal proceedings against George Brady to be non-dischargeable. For the reasons which follow, we affirm the findings and conclusions of the Bankruptcy Court.

### Statement of Facts

Until 1993 when various criminal and ethical charges were filed against him, George C. Brady, III was a licensed attorney who practiced law in the Commonwealth of Pennsylvania. Sometime in 1986, William Michener, who had been ap-pointed the Executor of his late aunt's estate, retained Mr. Brady to provide the legal services necessary to properly administer the estate. At Mr. Brady's direction, Mr. Michener opened a checking account for the estate into which all estate funds were deposited and over which only Mr. Michener had authorization to sign checks and make withdrawals. All account statements and canceled checks were sent to Mr. Brady's office with no account information being sent directly to Mr. Michener.

In December, 1989, as Mr. and Mrs. Brady were preparing to complete the purchase of a new home, they found themselves in need of additional funds at least until such time as their existing residence could be sold. Although Mrs. Brady thus knew that a "swing" loan would be necessary until their present home was sold, unbeknownst to her, Mr. Brady withdrew some $15,000 from the Estate of Margaret Quinn [1] by drawing a check to the order of "G.C. Brady, Escrow Agent" and then forging Mr. Michener's signature. In addition to these funds, Mr. Brady misappropriated an additional $6,000 from the Quinn Estate on March 10, 1989 when he forged a check in that amount and then deposited it into his personal account and another $465.32 on March 23, 1993 when he transferred the balance of the estate checking account into his personal checking account.

Mr. Michener did not authorize any of these withdrawals from the estate account and did not learn of them until October 7, 1994 when he received copies of checks and bank statements from Philadelphia National Bank. Although he filed a lawsuit against Mr. and Mrs. Brady in the Court of Common Pleas of Montgomery County, Mr. Michener did not have the financial resources to move it forward and he thereafter filed a claim for $15,000 with the Fund. The Fund, in March, 1997, approved

**1.** Mr. Brady apparently "borrowed" a similar amount from another estate for which he had been retained but, unlike the Quinn estate, the funds of the other estate were restored after the sale of his existing residence.

Mr. Michener's claim for payment of a contribution of $15,000 and in return, Mr. Michener agreed to "[turn] over to the Pennsylvania Lawyers Fund for Client Security Board whatever rights and claims may exist against the attorney or against any other party, so that the Board may proceed to obtain whatever amounts may be collectible for the purpose of reimbursement of the Fund for amounts paid to the Claimant by the Fund."

On October 21, 1998, the Bradys filed their Chapter 7 Bankruptcy. Approximately three months later on January 27, 1999, Mr. Michener filed his adversary proceeding to determine the dischargeability of the monies which Mr. Brady had misappropriated from him and asking that judgment be entered in his favor in the total amount of $21,465.32.

Following denial of the debtors' motion to dismiss the adversary complaint on the grounds, *inter alia*, that it was barred by the eleventh amendment and merger/collateral estoppel, a trial was held before Judge Scholl on April 27, 1999. Thereafter, Judge Scholl issued his lengthy and thorough Opinion and Order of June 14, 1999 granting the Motion to Amend to identify the Fund as a party plaintiff and entering judgment in favor of the plaintiffs and against both the defendant-debtors with respect to the $15,000 claim and on the defendants' counterclaims, and in favor of Michener and against George Brady only with regard to his claims for the theft of additional monies (i.e., $6,465.32) from the Estate. The debtors then filed this appeal.

### *Standards of Review*

■ Under 28 U.S.C. § 158(a), "[t]he district courts shall have jurisdiction to hear appeals ...from final judgments, orders and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." In hearing such appeals, the district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *In Re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631, 635 (3rd Cir.1998); *In Re Chalasani,* 92 F.3d 1300, 1306 (2nd Cir.1996).

Here, the plaintiff Michener's Adversary Complaint sought a declaration that the monies owed to him, as the Executor of his late aunt's estate, were non-dischargeable in bankruptcy under Sections 523(a)(2), (4) and (6) of the Bankruptcy Code. Those sections state, in relevant part:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

........

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

. . . . .

 To sustain a claim under § 523(a)(2)(A), a plaintiff must establish: (1) that the debtor made the representation; (2) that at the time the debtor made the representation he knew it was false; (3) that the debtor made the representation with the intention and purpose of deceiving the creditor; (4) that the creditor relied on the debtor's representation; and (5) that the creditor sustained the alleged loss and damages as a proximate result of the representation having been made by the debtor. *In re Segal,* 195 B.R. 325, 331 (Bankr.E.D.Pa.1996), *citing In re Graham,* 194 B.R. 369, 371 (Bankr.E.D.Pa.1996). The burden of proving that a debt is nondischargeable is upon the creditor, who must establish entitlement to an exception by a "preponderance of the evidence." *In re Cohn,* 54 F.3d 1108, 1114 (3rd Cir.1995), *citing Grogan v. Garner,* 498 U.S. 279, 282–89, 111 S.Ct. 654, 656–657, 112 L.Ed.2d 755 (1991). *See Also: In re Schachter,* 214 B.R. 767 (Bankr.E.D.Pa. 1997). Once established, however, § 523(a)(2)(A) excludes from discharge any liability arising from money, property, services, etc. that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor. *Cohen v. De La Cruz,* 523 U.S. 213, 223–24, 118 S.Ct. 1212, 1219, 140 L.Ed.2d 341 (1998).

 Section 523(a)(2)(B), on the other hand, is directed at a situation where a debtor utilizes a statement in writing respecting his financial condition, i.e., a written financial statement which is materially false, to obtain credit. Thus, pursuant to § 523(a)(2)(B), a creditor must prove that the debtor used a statement in writing (1) that was materially false; (2) respecting his financial condition; (3) upon which the creditor reasonably relied; and (4) with the intent to deceive the creditor. *In re Cohn, supra.*

 In order for a debt to be nondischargeable under Section 523(a)(4) arising from a breach of fiduciary duty, the debtor must have been acting as a trustee of an express or technical trust. *In re Woodall,* 177 B.R. 517, 521 (Bankr.D.Md. 1995). Indeed, the existence of a fiduciary relationship is a prerequisite to a finding of § 523(a)(4) liability. *In re Krank,* 84 B.R. 372, 376 (Bankr.E.D.Pa.1988), *citing In re Pavelka,* 79 B.R. 228, 232 (Bankr. E.D.Pa.1987). The attorney-client relationship, of course, can give rise to a fiduciary relationship within the meaning of § 523(a)(4) or an attorney might be a fiduciary by virtue of monies entrusted to him by his client. *Id., citing, inter alia, Purcell v. Janikowski,* 60 B.R. 784, 789 (Bankr.N.D.Ill.1986); *In re Wolfington,* 48 B.R. 920, 923 (Bankr.E.D.Pa.1985).

### *Discussion*

**A. Propriety of the Bankruptcy Court's allowance of amendment of the complaint?**

In this case, the debtors first challenge the Bankruptcy Court's decision to allow Michener to amend the complaint after the deadline for filing objections and for filing an adversary action to identify the Pennsylvania Lawyers Fund for Client Security as a party plaintiff.

Whether the plaintiff can amend his complaint at this time hinges upon whether he can clear the hurdles established by Fed.R.Bankr.P. 4004(a) and 4007, which effectively fix the time for filing objections to discharge and/or a complaint to determine a debt's dischargeability at 60 days after the first date set for the meeting of the creditors in accordance with 11 U.S.C. § 341(a).

 However, under Fed. R.Bankr.P. 7015, the rules of amendments of documents in adversary proceedings track the requirements of Fed.R.Civ.P. 15 for amendments of pleadings in civil litigation. *Matter of Plunkett,* 82 F.3d 738, 740

(7th Cir.1996). As is true in civil litigation matters, the decision as to whether to grant leave to amend is a matter vested wholly within the discretion of the Bankruptcy Court, and the district court will not disturb its decision on appeal unless there has been an abuse of that discretion. *U.S. v. Roberson*, 188 B.R. 364 (D.Md. 1995). In applying these rules, some courts have allowed an amended complaint to be filed beyond the bar date provided that the amendment can be found to relate back to the original complaint and so long as the amendment is not futile and will not cause severe prejudice to the non-moving party. *In re Cohen*, 139 B.R. 327, 332 (Bankr.E.D.Pa.1992); *In Re Krank*, 84 B.R. at 376. An amended claim relates back to the original complaint only if the original complaint has given fair notice of the facts underlying the newly-asserted claims to the debtor prior to the deadline for pleading such claims. *In re Segal*, 195 B.R. at 330. Stated otherwise, where the text and substance of a newly-asserted claim requires no additional factual allegations besides those recited in the original complaint to support it, and the amendment merely seeks to add an additional legal ground by which the discharge or dischargeability of a specific debt is challenged, an amendment to the pleadings may be allowable. *In re Ishkhanian*, 210 B.R. 944, 955 (Bankr.E.D.Pa.1997).

In granting leave to amend in this case, the Bankruptcy Court noted that the only substantive changes between the original and the proposed amended complaint consisted of the attachment of the subrogation agreement between Mr. Michener and the Fund and the addition of the Fund as a plaintiff. In carefully reviewing the excerpted record provided to this Court, we find no error in the Bankruptcy Judge's findings. To be sure, there were no additional facts alleged in the amended complaint that did not appear in the original complaint nor was there any change in the legal theories or claims which the original plaintiff (i.e., Michener) was advancing

against the debtors. Rather, it appears that the amendment was made merely to reflect the subrogation arrangement which had been agreed to by Mr. Michener and the Fund and to properly designate the Fund as the true party plaintiff with regard to the $15,000 claim. Thus, the debtors clearly had fair notice of the Fund's claims against them long before the bar date and we cannot find that any prejudice would inure to them by virtue of the amendment. We therefore find no abuse of discretion on the part of the Bankruptcy Court in granting the requested amendment.

**B. Propriety of the Bankruptcy Court's determination that the Fund has a non-dischargeable claim against Mrs. Brady for $15,000.**

The debtors next take exception to the Bankruptcy Court's determination that the $15,000 claim owing to the Fund is non-dischargeable as to not just Mr. Brady but as to Mrs. Brady as well.

As a general rule, fraudulent intent under 11 U.S.C. § 523(a) or under 11 U.S.C. § 727(a) cannot be imputed from the mere fact that a wife derived benefit from her husband's conduct, or even that she had knowledge of his misconduct. *In re Straughter*, 219 B.R. 672, 675 (Bankr. E.D.Pa.1998); *In Re Towe*, 147 B.R. 545, 551 (Bankr.D.Mont.1992), *aff'd*, 97 F.3d 1461, 1996 WL 539130 (9th Cir.1996). Similarly, in Pennsylvania, there is no general agency arising from the marital relationship nor any presumption flowing therefrom that either spouse has the authority to convey real estate held by the entireties without the other's joinder. *J.R. Christ Construction Co. v. Olevsky*, 426 Pa. 343, 232 A.2d 196, 198 (1967). There is, however, a presumption that, with respect to property held by the entireties, either spouse has the power to act for both without specific authority so long as the benefit of such action inures to both. *Id.*, 232 A.2d at 199; *Bradney v. Sakelson*, 325

Pa.Super. 519, 473 A.2d 189 (1984); *In Re Paolino,* 75 B.R. 641, 644–645 (Bankr. E.D.Pa.1987). The presumption then stands unless and until the other spouse establishes by a preponderance of the evidence that, at the time, the contract was made or the benefit provided, the contracting spouse was in fact not authorized to act for and to bind the other. *Bradney,* 473 A.2d at 191. *See Also: In Re Larrieu,* 230 B.R. 256, 271 (Bankr.E.D.Pa.1999).

 In this case, the Bankruptcy Court found there was "no real dispute that the Wife did not have any knowledge, at least at the time that they took place, nor did she participate in, any of the Husband's wrongdoings." Nevertheless, the debtors presented no evidence and did not "address the nature of the Wife's participation or lack thereof in the negotiations, agreement, and settlement on the Home....Thus the debtors did not offer any rebuttal evidence which tended to undermine the presumption of agency of their relationship relative to the purchase of the entireties property which they acquired with, in part, the misappropriated $15,000..." (See, Opinion and Order of June 14, 1999 at p. 666).

As noted above, in hearing bankruptcy appeals, the district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See: In Re Krystal Cadillac, supra.* Given that the debtors have elected not to produce copies of their testimony and the acknowledgment in the appellants' brief that Mrs. Brady did know that a "swing loan" was needed to ensure that settlement on their new home could be completed, there is no foundation upon which this Court can find that the Bradys produced sufficient evidence to rebut the presumption that in converting the $15,000 from the Quinn Estate to ensure settlement on the Bradys' new home, Mr. Brady was acting on behalf of both himself and his wife. We thus cannot find that the Bankruptcy Court erred in either its findings of fact or its

legal conclusions that the $15,000 "swing loan" from the Quinn Estate was non-dischargeable as to Mrs. Brady.

## C. Applicability of the Eleventh Amendment to bar the Fund from proceeding against the debtors.

The debtors also re-assert the argument which they made in support of their motions to dismiss the adversary complaint and reconsideration that the Bankruptcy Court erred in allowing the Fund to join in the adversary proceeding because the joining of a state agency to a federal bankruptcy adversary proceeding without its written consent violates the Eleventh Amendment to the U.S. Constitution. We disagree.

 The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Amendment has been interpreted to protect an "unconsenting state from suit in federal court by its own citizens as well as those of another state." *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 (3rd Cir.1996), quoting *Pennhurst State School v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984). This is because the Eleventh Amendment stands for the principle that state sovereign immunity limits the federal courts' jurisdiction under Article III. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 64, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996). The burden of proving entitlement to Eleventh Amendment immunity falls upon the party asserting it. *Christy v. Pennsylvania Turnpike Commission,* 54 F.3d 1140, 1144 (3rd Cir.1995).

 There are, however, certain well-established exceptions to the reach of the Eleventh Amendment. *Atascadero*

*State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). If a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action. *Blanciak,* 77 F.3d at 694, citing *Atascadero,* 473 U.S. at 234, 105 S.Ct. at 3142 and *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). Alternatively, in appropriate circumstances and with respect to the rights guaranteed under the Fourteenth Amendment, Congress has the power to abrogate a state's Eleventh Amendment immunity. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974). For either of these exceptions to apply, however, there must be an unequivocal expression of either a state's consent or of the congressional intent to overturn the constitutionally guaranteed immunity of the several states. *Seminole Tribe,* 517 U.S. at 55–56, 116 S.Ct. at 1123; *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907.

█ In application of the foregoing, the Bankruptcy Court first found that there was no evidence and no legal authority in the record to support the debtors' assertion that the Lawyers' Fund for Client Security was a state entity which was covered by Eleventh Amendment immunity. In carefully reviewing the record in this case and after now having independently researched the issue, we too, find neither any evidence nor any legal precedent to demonstrate that the Fund is an arm of the Commonwealth of Pennsylvania. We therefore see no basis upon which to disturb Judge Scholl's factual finding on this point.

█ Moreover, even assuming *arguendo* that the Fund *is* a state entity, as the Eleventh Amendment itself makes clear, immunity applies only to suits "in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Again, the debtors cite to no authority to support their argument that the Eleventh Amendment applies to bar suits by a state entity. In view of this and in consideration of the fact that a state may waive its immunity, we would agree with the Bankruptcy Court's conclusion that, to the extent that the Eleventh Amendment did operate to preclude suit by a state entity without its consent, the Fund here effectively did consent by indicating its wish to be included as a party plaintiff.

**D. Propriety of the Bankruptcy Court's holding that Michener could remain a party in the adversary action despite his having assigned his claims against the debtors to the Fund.**

Finally, Mr. Brady takes exception to Judge Scholl's ruling that Mr. Michener could continue to pursue his claims against him for the additional $6,465.32 that was converted in March, 1989 and March, 1993. Specifically, the debtor contends that these claims should be barred inasmuch as the Subrogation and Assignment Agreement which Mr. Michener signed when he received the $15,000 payment from the Fund assigned to it all of the rights and claims which he had against Mr. Brady, as the offending attorney.

█ Pennsylvania law recognizes both legal and equitable assignments. *Brager v. Blum,* 49 B.R. 626, 629 (E.D.Pa. 1985). A legal assignment is a transfer of property, a right or interest from one person, the assignor, to another, the assignee, which transfers the entire interest in the thing assigned unless it is qualified. *Huff v. Nationwide Insurance Company,* 167 B.R. 53, 60 (W.D.Pa.1992), citing *In re Purman's Estate,* 358 Pa. 187, 190, 56 A.2d 86, 88 (1948). To effect a legal assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights. *Id.,* citing *Brager v. Blum, supra,* and *Melnick v. Pennsylvania Co. for Banking &*

*Trusts,* 180 Pa.Super. 441, 119 A.2d 825, 826 (1956).

 The doctrine of equitable assignment is a particular application of the broader principle of subrogation which, of course, places the ultimate discharge of a debt upon a party who in fairness should bear it. *United States Fire Insurance Company v. Aetna Casualty and Surety Company,* 1996 WL 744900 *6 (E.D.Pa. 1996).

 As Judge Scholl noted in his June 14, 1999 decision, subrogation is an equitable doctrine which:

> "...will not be applied where it would inequitable to do so, where it would work injustice to others having equal equities, or where it would operate to defeat the lawful rights of another.... In order for subrogation to apply, the equities of the party seeking to be subrogated must be superior to those of other claimants." (citing *Mellon Bank, N.A. v. Barclays American/Business Credit, Inc.,* 527 F.Supp. 251, 255 (W.D.Pa.1981) and *In Re Co–Build Companies, Inc.,* 21 B.R. 635, 636 (Bankr.E.D.Pa.1982)).

According to the excerpted testimony of Mr. Michener as referenced in Judge Scholl's opinion, it clearly appears that he did not intend and did not understand that by signing the Subrogation and Assignment Agreement with the Fund that he would be relinquishing any claims which he had against Mr. Brady other than to the extent of the $15,000 contribution which the Fund had granted him. Again, the debtors have offered no evidence other than the written agreement itself nor any legal authority to refute Mr. Michener's testimony or Judge Scholl's legal conclusions and factual findings. Inasmuch as we would also find from the existing record that, at the time he signed the assignment and subrogation agreement, Mr. Michener did not have the present intention of divesting himself of all of his claims and that it would be inequitable and

against the underlying principles of subrogation to permit Mr. Brady a discharge of the remaining $6,465.32 which he converted from the Quinn Estate, we see no reason to disturb the Bankruptcy Court's decision in this regard either.

For all of the preceding reasons, the June 14, 1999 Opinion and Order of the Bankruptcy Court shall be affirmed in its entirety in accordance with the attached order.