

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-1998

# In Re: Krystal Cadillac

Precedential or Non-Precedential:

Docket 97-7117,97-7118

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"In Re: Krystal Cadillac" (1998). *1998 Decisions.* Paper 86.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/86

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 23, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-7117 and 97-7118

IN RE: KRYSTAL CADILLAC OLDSMOBILE GMC TRUCK,
INC., Debtor

KRYSTAL CADILLAC OLDSMOBILE GMC TRUCK, INC.;
LAWRENCE V. YOUNG

v.

GENERAL MOTORS CORPORATION
        Krystal Cadillac
        Oldsmobile
        GMC Truck, Inc.,
        Appellant in No. 97-7117

IN RE: KRYSTAL CADILLAC OLDSMOBILE GMC TRUCK,
INC., Debtor

KRYSTAL CADILLAC OLDSMOBILE GMC TRUCK, INC.;
LAWRENCE V. YOUNG

v.

GENERAL MOTORS CORPORATION
        Lawrence V. Young,
        Appellant in No. 97-7118

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 96-cv-01614)

Argued
January 28, 1998

Before: MANSMANN, COWEN and ALITO, Circuit Judges.

(Opinion Filed April 23, 1998)

William C. Cramer, Esquire
Kathleen W. Cramer, Esquire
 (ARGUED)
Suite 414
Chambersburg Trust Building
Chambersburg, PA 17201

COUNSEL FOR APPELLANT
KRYSTAL CADILLAC OLDSMOBILE
GMC TRUCK, INC., in No. 97-7117

Lawrence V. Young, Esquire
Sara A. Austin, Esquire (ARGUED)
Countess, Gilbert & Andrews
29 North Duke Street
York, PA 17401

COUNSEL FOR APPELLANT
LAWRENCE V. YOUNG In No.
97-7118

James A. Mollica, Jr., Esquire
Mollica & Murray
450 Trimont Plaza
1305 Grandview Avenue
Pittsburgh, PA 15211

2

Of Counsel:

Carol H. Lesnek-Cooper, Esquire
General Motors Corporation
New Center One Building
3031 West Grand Boulevard
Detroit, MI 48232

COUNSEL FOR APPELLEE
GENERAL MOTORS CORP.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal involving bankruptcy law, we are asked to decide whether a franchise agreement involving a vehicle dealership had been terminated prior to the filing of the bankruptcy petition. Because we find that the franchise agreement was still in effect when the petition wasfiled, it follows a fortiori that the vehicle franchise was an asset of the bankruptcy estate. We further find that the post-petition adjudications by the state administrative board and the Pennsylvania Commonwealth Court, effectively ordering the termination of the franchise agreement, were made in violation of the automatic stay provision of 11 U.S.C. S 362(a)(3) and, thus, were not binding on the bankruptcy court. Accordingly, we will reverse the order of the district court affirming the order of the bankruptcy court.

I.

The resolution of the dispute before us turns, in large part, on certain events which occurred prior to the commencement of the bankruptcy proceeding. We reiterate the pertinent facts here.

Krystal Cadillac-Oldsmobile-GMC Truck, Inc. ("Krystal Cadillac" or the "Debtor"), a licensed vehicle dealer in the Commonwealth of Pennsylvania, owned and operated a GMC dealership in Gettysburg, Pennsylvania.1 General

_____

1. The president of Krystal Cadillac Oldsmobile GMC Trucks, Inc., Harry Pappas, also owned and operated a Chrysler dealership at the same

3

Motors Corporation is a licensed vehicle manufacturer in the Commonwealth of Pennsylvania and the appellee in this consolidated appeal.2

Krystal Cadillac operated the GMC dealership pursuant to the General Motors Corporation (Oldsmobile Division) Dealer Sales and Service Agreement, which went into effect on November 1, 1990. This franchise agreement was to remain in effect until October 31, 1995, unless terminated earlier and, as long as the dealer fulfilled its obligations under the franchise agreement, it was assured the opportunity to enter into a new dealer agreement at the expiration date.3

In October of 1991, General Motors Acceptance Corporation withdrew its line of credit financing. Consequently, Krystal Cadillac found itself lacking the necessary financing to purchase new GM vehicles. To no avail, it made numerous attempts to obtain alternative financing. On March 6, 1992, GM notified Krystal Cadillac that it was in breach of the franchise agreement for failing to maintain a line of credit and for failing to purchase new vehicles. Based on the continued breach, GM gave notice on May 10, 1993 that the franchise would terminate in sixty days, that is, on July 13, 1993. At Krystal Cadillac's

_____

location under the name, "Krystal Jeep–Eagle, Inc." On January 13, 1995, Krystal Jeep–Eagle filed a similar Chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the Middle District of Pennsylvania.

2. Krystal Cadillac, with Lawrence V. Young, the Chapter 11 Trustee in Bankruptcy, filed separate appeals which we have consolidated (collectively referred to as the "Appellants").

3. We find that the franchise agreement did not expire by its own terms on October 31, 1995. At oral argument, counsel for the Debtor informed us that the October 31, 1995 date was viewed as a renewal date, rather than an expiration date, and therefore the franchise continued indefinitely until one of the parties gave written notification of termination. This unique arrangement was mandated because of the extremely valuable assets involved in maintaining a viable GMC dealership. Counsel for GM did not take issue with this assertion by the Debtor's counsel.

4

request, GM extended the termination date to August 12, 1993.[4]

On August 11, 1993, the day before the franchise agreement would have expired, Krystal Cadillac filed an appeal with the Pennsylvania Board of Vehicle Manufacturers, Dealers and Salespersons (the "Vehicle Board"), requesting a hearing on the merits of the termination. Approximately one year later, on August 2, 1994, the Vehicle Board conducted a hearing to review the propriety of GM's notice of termination.[5] Before the Vehicle Board rendered its determination, Krystal Cadillac filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 8, 1994. Thereafter, on September 27, 1994, the Vehicle Board entered an Order and Decision allowing GM to terminate the franchise agreement. Subsequently, Krystal Cadillac appealed the order of the Vehicle Board to the Pennsylvania Commonwealth Court, which affirmed the Vehicle Board's decision on November 6, 1995. The Pennsylvania Supreme Court denied Krystal Cadillac's petition for allowance of appeal. State Bd. of Vehicle Mfrs. v. Krystal Cadillac-Oldsmobile-GMC Truck, Inc., 676 A.2d 1203 (Pa. 1996).

While this appeal was pending before the Pennsylvania Commonwealth Court, the bankruptcy court appointed Lawrence V. Young as the Chapter 11 Trustee. The Trustee, in turn, filed a motion to sell the Debtor's assets, including the GM franchise, free and clear of liens and encumbrances. GM filed an objection to the Trustee's motion to sell, contending that the franchise agreement had been lawfully terminated and was not saleable or assignable. The Debtor also objected to the Trustee's motion to sell on the basis that it intended to file a

_____

4. According to Article 13.2 of the franchise agreement, Krystal Cadillac was entitled to ninety days notice, not sixty days as originally provided by GM.

5. Initially, Krystal Cadillac and GM waived the 120-day requirement for setting a hearing date and instead stipulated to a general continuance. When notified of the August 2, 1994 hearing date, the Debtor requested an additional continuance which was denied. Nonetheless, Krystal Cadillac was represented by counsel at the hearing.

reorganization plan. On June 15, 1995, the bankruptcy court conducted a hearing on the proposed sale, at which time the court denied the Trustee's motion to sell. On that same date, the Debtor filed a Plan of Reorganization with the bankruptcy court, which provided for the sale of the GM franchise as a means to pay creditors. GM filed an objection to the Plan on July 10, 1995, arguing that since the franchise had been validly terminated in the state proceedings, the franchise was not an asset of the bankruptcy estate available for sale. The Debtor filed an amended reorganization plan on October 24, 1995, to which GM lodged the same objection.

On December 27, 1995, the bankruptcy court entered an order which required the Debtor to file, on or before February 2, 1996, a motion to assume and assign the General Motors franchise and to provide to the Trustee with certain documentation to support such motion, including an unredacted copy of the agreement of sale between the Debtor and any potential purchaser, a copy of the transfer application, evidence to support the potential purchaser's financial abilities, and proof of the Debtor'sfinancial ability to consummate its Plan of Reorganization.6  In its attempt to comply with the court's December 27th order, the Debtor filed a timely motion to assume and assign the GMC dealership franchise, with documentation of itsfinancial position vis-a-vis the Plan of Reorganization. On March 14, 1996, the Trustee filed a certification with the bankruptcy court, indicating that the Debtor had failed to comply with the terms of the court's December 27, 1995 order, and requesting that the case be converted to a Chapter 7 proceeding.

The bankruptcy court held a hearing on April 1, 1996, regarding the Debtor's compliance with the December 27th order and to consider the merits of the Debtor's motion to

_____

6. In the event the Debtor failed to comply with the December 27th order, the bankruptcy court indicated it would enter an order dismissing the case or converting it to a Chapter 7 proceeding. The Trustee's motion to convert the case to a Chapter 7 proceeding, contingent upon the Debtor not performing certain requirements pursuant to its reorganization plan, was still outstanding at this time.

assume and assign the franchise. Subsequently, on April 15, 1996, the bankruptcy court entered an order denying the Debtor's motion to assume and assign the franchise. The court reasoned that the decisions rendered in the state proceedings regarding the franchise termination precluded the bankruptcy court from authorizing a sale of the franchise. Both the Debtor and the Trustee filed motions for reconsideration of the bankruptcy court's April 15, 1996, order. In addition, the Trustee filed a motion to assume and to sell the franchise agreement to a qualified buyer for the price of Five Hundred Thousand Dollars ($500,000), which GM opposed.

On July 26, 1996, the bankruptcy court entered an order denying the motions for reconsideration and the Trustee's motion to sell the franchise agreement. The court held that the appeals to the Vehicle Board and to the Pennsylvania Commonwealth Court clearly were filed by the Debtor and hence constituted an action by the Debtor, not against the Debtor. Since the automatic stay provisions of the Bankruptcy Code applied only to actions against the Debtor, they did not apply to the state proceedings. 7 The court therefore concluded that the final termination of the franchise agreement occurred by operation of law as a result of the Vehicle Board's determination that GM had properly effected a termination prior to the filing of the bankruptcy petition. Based upon considerations of comity and finality, the bankruptcy court held that the findings of the Vehicle Board regarding the valid termination of the franchise agreement precluded it from ruling on the Debtor's ability to assume the franchise agreement since it is clear under section 365 of the Bankruptcy Code, 11 U.S.C. S 365, that a debtor cannot assume a validly terminated contract.

The Debtor and the Trustee appealed the bankruptcy court's July 26, 1996, order to the district court on August 5, 1996. The district court affirmed the order of the bankruptcy court on February 3, 1997, holding that the

_____

7. The court further opined that in order to prevent the state proceedings from going forward, the Debtor should have petitioned the court for an injunction under section 105 of the Bankruptcy Code.

7

proceeding before the Vehicle Board did not fall within the scope of the automatic stay provided by 11 U.S.C. S 362 and, therefore, the Vehicle Board's order allowing GM to terminate the franchise agreement was valid and the termination was effective. Accordingly, the district court held the franchise agreement was not an asset of the bankruptcy estate. The Debtor and the Trustee filed timely but separate appeals, which we consolidated for purposes of briefing and disposition.

The bankruptcy court exercised its jurisdiction over this matter pursuant to 28 U.S.C. S 157(b). The district court had jurisdiction to review the bankruptcy court's order pursuant to 28 U.S.C. S 158(a). Our appellate jurisdiction over the district court's order rests upon 28 U.S.C. SS 158(d) and 1291. In undertaking our review, we stand in the shoes of the district court, applying a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (citations omitted); In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

II.

The outcome of this appeal hinges on whether the franchise agreement should have been included as an asset of the bankruptcy estate. The filing of a voluntary petition for relief in bankruptcy pursuant to 11 U.S.C. S 301 creates an estate in bankruptcy. 11 U.S.C. S 541(a). Generally, the property of an estate in bankruptcy is comprised of all legal or equitable interests of the debtor in property on the date of commencement of the bankruptcy proceeding. 11 U.S.C. S 541(a)(1).8 If, in fact, the franchise agreement was still in force on the date Krystal Cadillac filed its bankruptcy petition, the franchise agreement, by statute, became an asset of the bankruptcy estate. In order to determine whether the franchise agreement was still in effect on August 11, 1993, the date Krystal Cadillac initiated this bankruptcy proceeding, we look to the express language of the agreement, as well as to the Pennsylvania Board of

_____

8. The exceptions set forth in 11 U.S.C. SS 541(b) and (c)(2) to this general rule are inapplicable here.

8

Vehicles Act, Pa. Stat. Ann., tit. 63, S 818.1 et seq. (West 1996), governing transactions between vehicle manufacturers, dealers and salespersons. We turnfirst to the franchise agreement.

In October 1990, the Debtor and GM executed the Oldsmobile Division Dealer Sales and Service Agreement ("Oldsmobile Agreement"), which went into effect on November 1, 1990. Paragraph Eleven sets forth the term of the franchise agreement as follows:

> This Agreement shall expire on October 31, 1995, or ninety days after the death or incapacity of a Dealer Operator or Dealer Owner, whichever occurs first, unless earlier terminated. Dealer is assured the opportunity to enter into a new Dealer Agreement with Oldsmobile at the expiration date if Oldsmobile determines Dealer has fulfilled its obligations under this Agreement.

The Oldsmobile Agreement further provided, in Paragraph Thirteen, for the incorporation of GM's Standard Provisions, Dealer Sales and Service Agreement (GMMS 1013) ("Standard Provisions"), as part of the franchise agreement. Article 13 of the Standard Provisions addresses breaches and the remedy procedures. Where the breach has gone uncorrected, Article 13.1.13 provides:

> If, however, Dealer's response does not demonstrate that the breach has been corrected, or explain the circumstances to [GM's] satisfaction, termination is warranted and [GM] may terminate this Agreement upon written notice to Dealer. Termination will be effective 60 days following Dealer's receipt of the notice.

Article 13.2, dealing with failure of performance by the dealer,9 provides that the dealer be given no less than six months to correct the failure. If the dealer does not correct the failure within the time allotted, Article 13.2 provides

_____

9. Failure of performance entails failure of the dealer to perform its sales
or service responsibilities adequately, including those responsibilities relating to customer satisfaction and training. Standard Provisions, Article 13.2.

that GM may terminate the franchise agreement by giving the dealer ninety days advance written notice.

Our inquiry does not end with an examination of the terms of the franchise agreement, however, since the agreement between the Debtor and GM is governed by the Pennsylvania Board of Vehicles Act, Pa. Stat. Ann., tit. 63, S 818.1 et seq. (West 1996 & 1997 Supp.). The Act provides for the appointment of a Board of Vehicle Manufacturers, Dealers and Salespersons, which is empowered to regulate the licensing of vehicle salespersons, dealers and manufacturers, and "to adopt, promulgate and enforce such rules and regulations . . . as are deemed necessary and proper to effectuate the provisions of [the Act] . . .", among other things. Id. SS 818.4(1), (9). Under the Act as amended in 1996, section 818.13 sets forth the provisions governing termination of franchises.10 In particular, the Act states that any manufacturer who terminates or fails to renew the franchise of any vehicle dealer "unfairly, without due regard to the equities of said dealer and without just cause," has violated the Act. Id. S 818.13(a). Section 818.13(c) requires the manufacturer to give the dealer a minimum of sixty days advance notice of the termination or failure to renew the franchise agreement, although subsection (c) allows a shorter notice period in certain circumstances not present here. Id. S 818.13(c). Of particular relevance to this case is the subsection on appeals:

> At any time before the effective date of such termination or failure to renew, the dealer or distributor may appeal to the board for a hearing on the merits, and following due notice to all parties concerned, such hearing shall be promptly held. No such termination or failure to renew shall become

_____

10. In 1996, the state legislature amended the Act by redesignating and rewriting section 818.9(c) as section 818.13. (Former section 818.13 relating to the application for a license was renumbered as Pa. Stat. Ann., tit. 63, S 818.22 in the 1996 amendment.) The substance of section 818.9(c) has not been changed by the 1996 amendment, but rather, reorganized into subparts with appropriate headings. For ease of reference, we will refer to the pertinent portions of the amended section 818.13.

10

> effective until final determination of the issue by the
> board.

Id. S 818.13(d) (emphasis added). Finally, in the event the
dealer appeals the termination or failure to renew the
franchise, section 818.13(e) provides that the manufacturer
retains the burden of proving that just cause existed for
such termination or failure to renew. Id. S 818.13(e).

Reading the franchise agreement and the Act together, as
we must, we conclude that the franchise agreement was not
terminated, but rather, was in force on the date the Debtor
filed the petition in bankruptcy. The Act makes clear that
once a dealer has appealed the notice of termination, that
termination shall not become effective until the Vehicle
Board issues its decision. Indeed, counsel for GM conceded
at oral argument that Krystal Cadillac retained a viable
legal interest in the GM franchise at the time Krystal
Cadillac filed a notice of appeal with the Vehicle Board.
Moreover, the Vehicle Board had not rendered its decision
as of the date of the bankruptcy filing on August 11, 1993.
Accordingly, we find that termination of the franchise
agreement had not been effectuated on August 11, 1993,
and, therefore, that the franchise became an asset of the
bankruptcy estate on that date.

III.

We further conclude that the subsequent determinations
by the Vehicle Board and the Pennsylvania Commonwealth
Court, effectively ordering the termination of the franchise
agreement, were made in violation of the automatic stay
provisions of 11 U.S.C. S 362(a) and, thus, were not binding
on the bankruptcy court. Section 362(a) provides in
relevant part:

> (a) Except as provided in subsection (b) of thi s
> section, a petition filed under section 301, 302, or 303
> of this title, . . . operates as a stay, applicable to all
> entities, of--
>
> (1) the commencement or continuation, including
> the issuance or employment of process, of a
> judicial, administrative, or other action or

11

proceeding against the debtor that was or could
have been commenced before the commencement of
the case under this title, or to recover a claim
against the debtor that arose before the
commencement of the case under this title;

. . . .

(3) any act to obtain possession of property of th e
estate or of property from the estate or to exercise
control over property of the estate;

11 U.S.C. SS 362(a)(1), (3).11 Subsection (b) of section 362
enumerates specific exceptions to the automatic stay
provisions, none of which applies here.12   11 U.S.C. S 362(b).
The legislative history to section 362 and our jurisprudence
leave no doubt that the scope of the automatic stay is
broad. In re Atlantic Bus. and Community Corp., 901 F.2d
325, 327 (3d Cir. 1990); Association of St. Croix
Condominium Owners v. St. Croix Hotel Corp., 682 F.2d
446, 448 (3d Cir. 1982). Explaining the purpose behind
section 362, Congress has stated:

The automatic stay is one of the fundamental debtor
protections provided by the bankruptcy laws. It gives
the debtor a breathing spell from his creditors. It stops
all collection efforts, all harassment, and all foreclosure
actions. It permits the debtor to attempt a repayment or
reorganization plan, or simply to be relieved of the
financial pressures that drove him into bankruptcy.

_____

11. We noted in Borman v. Raymark Indus., Inc. that the estate property
does not have to be in the debtor's possession for section 362(a)(3) to
apply. 946 F.2d 1031, 1035 n.2 (3d Cir. 1991). We thus concluded that
section 362(a)(3) applies to actions against third parties as well as
actions against the debtor, unlike subsection (a)(1) which ordinarily
stays
only actions against the debtor. Id. (citation omitted).

12. In its brief, GM argues that the continuation of the appeal before the
Vehicle Board constituted an enforcement of the Board's police or
regulatory power and thus fell within the exception to the automatic stay
provided under 11 U.S.C. S 362(b)(4). We do not find merit to this
argument. Clearly the proceeding before the Board was not commenced
by the Board to enforce regulatory powers. Rather, the appeal was filed
by the Debtor in response to GM's notice of termination.

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.

H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296. The broad reach of the automatic stay is further evidenced in the term, "property of the estate," as defined in 11 U.S.C. S 541(a).

The Debtor maintains that the termination of the franchise is an act which resulted in GM taking possession of an asset of the bankruptcy estate and, therefore, was subject to the automatic stay provision in section 362(a)(3). We agree with the Debtor that section 362(a)(3) applies to the facts before us. GM's actions before the bankruptcy court, i.e., objecting to the Trustee's Motion to Sell the Debtor's Assets and the Motion to Assume and Assign as well as to the Debtor's Plan of Reorganization, on the basis that (1) the franchise agreement had been terminat ed and, thus, was not the Debtor's asset and (2) the state court determination to that effect was binding on the bankruptcy court, constituted acts to take possession or control of property of the bankruptcy estate.

We find support in In re Atlantic Bus. and Community Corp., 901 F.2d 325 (3d Cir. 1990). There we considered whether the debtor's possession of a tenancy at sufferance in a radio station and transmitter created a property interest as defined under section 541 and, as such, was protected by the automatic stay provision in section 362(a)(3). Id. at 328. Informed by precedent in our sister circuits, In re 48th St. Steakhouse, Inc., 835 F.2d 427 (2d Cir. 1987), we concluded that a possessory interest in real property fell within the purview of the bankruptcy estate under section 541 and, therefore, was protected by the automatic stay provisions of section 362. 901 F.2d at 328. Thus we held the landlord's acts to evict the debtor and

13

dispossess it of its tenancy interest violated the automatic stay provision of section 362(a)(3). Id.13

Like the landlord in Atlantic, GM undertook to dispossess the bankruptcy estate of one of its assets. The fact that Krystal Cadillac actually filed the notice of appeal to the Vehicle Board does not alter this result. What is dispositive here are the acts taken by GM after the bankruptcy petition was filed, after having learned that the Debtor intended to assign its interest in the GMC franchise as part of its reorganization plan. We can come to no other conclusion than that GM's actions before the Vehicle Board, the Pennsylvania Commonwealth Court, and the bankruptcy court were taken to obtain possession of the franchise agreement, which we find to be an asset of the bankruptcy

_____

13. In arriving at its decision, the bankruptcy court relied on United States v. Inslaw, 932 F.2d 1467 (D.C. Cir. 1991). There the debtor attempted to resolve a contract dispute with the Justice Department by filing a complaint in the bankruptcy proceeding alleging a violation of the
automatic stay provision. The court found that the debtor was trying to remedy pre-petition acts of fraud, bias or harassment allegedly on the part of the Justice Department by invoking the automatic stay provisions. Id. at 1474. Because section 362(a) applies only to acts taken after the petition is filed, the court held that the bankruptcy court lacked
jurisdiction to resolve the contract dispute between Inslaw and the Justice Department. Id. at 1475. In dicta, however, the court opined that ensuring that the creditors do not destroy the bankruptcy estate in their scramble for relief does not mean that every party who resists the debtor's view of its rights violates section 362(a) if found in error by the
bankruptcy court. Id. at 1473. The court therefore concluded that "someone defending a suit brought by the debtor does not risk violation of S 362(a)(3) by filing a motion to dismiss the suit, though his resistance
may burden rights asserted by the [debtor]." Id. (citing Martin-Trigona v. Champion Fed. Savings & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989)).

It is on this language that the bankruptcy court here relied in concluding that GM did not violate the automatic stay when it participated in the proceeding before the Vehicle Board. The bankruptcy court failed to recognize that, in both Inslaw and Martin-Trigona, the debtors were using the automatic stay provision to invoke the bankruptcy court's jurisdiction over a non-core dispute. Here, the asset itself is at the core of the dispute. Accordingly, we find that Inslaw and Martin-Trigona are not relevant here.

estate. Accordingly, GM's acts to enforce the state court's termination of the franchise agreement and to obtain possession of the GMC franchise violated the automatic stay provision of section 362(a)(3).14

IV.

In sum, we find that Krystal Cadillac's property interest in a viable GMC franchise is an asset of the bankruptcy estate and that the Trustee is entitled to cure any defects, and to assume and assign the franchise for the benefit of all of the Debtor's creditors. Accordingly, we will reverse the judgment of the district court affirming the order of the bankruptcy court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

14. Because we have concluded that the automatic stay provision of section 362(a)(3) was violated, we need not consider the Appellants' argument that the state proceedings were automatically stayed under section 362(a)(1). In addition, General Motors argues that we are bound under 28 U.S.C. S 1738 by the Pennsylvania Commonwealth Court's decision regarding the applicability of the automatic stay provision. However, the Pennsylvania Commonwealth Court held only that 11 U.S.C. S 362(a)(1) did not apply because the proceeding before the Vehicle Board was commenced by, not against, the debtor. The Pennsylvania Commonwealth Court did not decide whether 11 U.S.C. S 362(a)(3), on which we base our decision, applies. Thus, we need not and do not decide whether a decision of the Pennsylvania Commonwealth Court on the applicability of 11 U.S.C. S 362(a)(3) would bind us.