James Philip SLETTELAND,
Debtor–Appellee,

v.

Owen ORNDORFF, R. Lee Roberts, Jeffrey L. Smith, individually and as officers and directors of Rosebud Energy Corp., Rosebud Energy Corp., Defendants–Appellants,

Exxon Billings Cogeneration,
Inc., Defendant.

No. 00–5041.

United States Court of Appeals,
Second Circuit.

Feb. 16, 2001.

Charles E. Simpson, Windels Marx Lane & Mittendorf, LLP, New York, NY, for appellant.

Robert M. Callagy, Satterlee, Stephens, Burke & Burke LLP, New York, NY, for appellee.

Present: Van GRAAFEILAND, SOTOMAYOR and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge* ), it is hereby

ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.

Defendants–Appellants Owen Orndorff, R. Lee Roberts and Jeffrey L. Smith (the "Orndorff Group") appeal from an order of the United States District Court for the Southern District of New York (McKenna, *J.*) affirming the decision of the bankruptcy court below that ordered the Orndorff Group to turn over certain funds constituting property of debtor James Phillip Sletteland's bankruptcy estate. Specifically, the bankruptcy court decision (Bohanon, *J.*) held that the debtor's periodic receipt of certain funds as a shareholder of the Rosebud Corporation ("Rosebud"), a corporation managed by the Orndorff Group and owned by the debtor and the Orndorff Group as its sole shareholders, constituted "proceeds . . . or profits of or from property of the estate" pursuant to section 541(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code") and were thus subject to turnover to the debtor's estate pursuant to 11 U.S.C. § 542. The district court affirmed for "substantially the reasons" set forth in the bankruptcy court's opinion.

A brief explanation of the source of the funds at issue is necessary. Rosebud is the general partner of an electrical power plant project and declares dividends on a quarterly basis based on profits from that project. Pursuant to agreements not at issue in this appeal, a certain portion of the Rosebud shareholders' dividends are paid to other entities that are not parties to this proceeding. The remainder of the Rosebud shareholders' dividends are, in certain circumstances, subject to a contract with Exxon Billings Cogeneration ("Exxon"). Exxon is the limited partner in a partnership with BGI, a company that, like Rosebud, is wholly owned by the debtor and the Orndorff Group. This BGI/Exxon partnership operates a less profitable electrical power plant project. Because of the potential for operating shortfalls in connection with this second plant, Exxon and the BGI shareholders (*i.e.* the debtor and the Orndorff Group) entered into a Revenue Deficiency Obligation ("RDO") Agreement whereby both agreed to fund the plant's shortfalls. The RDO Agreement provided that if BGI did not pay its share of any such shortfall, Exxon's payment of such amounts would be considered a loan from Exxon to BGI. In connection with BGI's obligations under the RDO Agreement, the debtor and the Orndorff Group also entered into a Guaranty and Pledge Agreement ("Guaranty") that gave Exxon the right—in the event of a revenue shortfall—to make a demand for the debtor's and the Orndorff Group's personal distributions from Rosebud up to the amount needed to satisfy BGI's obligation under the RDO Agreement (an "RDO call"). Absent an RDO call, Exxon had no rights with respect to any portion of the Rosebud dividends.

Rosebud distributed dividends in October 1999. Shortly after this adversary proceeding was commenced, Rosebud did so again in January 2000. While the members of the Orndorff Group received their net October 1999 and January 2000 distributions, they caused Rosebud to withhold

the debtor's net distributions.[1] The courts below held that the debtor was entitled to these net distributions and declared, *inter alia,* that future withholdings of the debtor's net distributions would constitute a violation of the Bankruptcy Code.

■ The members of the Orndorff Group have proffered no cognizable basis upon which they have a right to challenge the bankruptcy court's order to turn over the debtor's net distributions because, while there are potentially scenarios in which the debtor's right to such funds is superseded by Exxon's right,[2] the members of the Orndorff Group have pointed to no scenario under which they or Rosebud have any right to the disputed funds. Thus, the members of the Orndorff Group have no standing to bring their claims with respect to such funds.

■ Moreover, any appeal from the judgment of the bankruptcy court lacks substantive merit. The Orndorff Group argues that the bankruptcy judge erred in concluding that the net distributions were "proceeds ... or profits of or from property of the estate" because the court allegedly erred in holding that the Rosebud shares themselves were property of the estate. In support of this argument, the Orndorff Group points to the following language in section 3.1 of the Guaranty with Exxon, which it claims demonstrates a transfer of share ownership putting the shares beyond the bounds of the debtor's estate:

As security for the payment and performance of such Shareholder of the terms, conditions and covenants of this Guaranty, each Shareholder shall, and does hereby, pledge and grant a security interest to Exxon in, all of his right, title and interest in and to the Distributions.... [E]ach shareholder shall, and does hereby, further pledge and grant a security interest in any and all stock, bond, note or other security issued by Rosebud Corporation issued by Rosebud Corporation ... to such Shareholder....

Guaranty, § 3.1.

We need not decide whether this contractual arrangement suffices to take the Rosebud shares, or any portion of the Rosebud dividends other than the debtor's net distributions at issue here, outside the scope of the debtor's bankruptcy estate. The only property sought by the debtor on this appeal is his net distribution payments from Rosebud, and no one disputes that the debtor, just like the other shareholders (*i.e.,* the Orndorff Group), has a cognizable interest in receiving such net distributions. Such interest constitutes property of the estate pursuant to section § 541(a)(1) of the Bankruptcy Code, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This would be true even if, as the Orndorff Group claims, the debtor's right to receive the net distributions should be characterized solely as a contractual right provided by the Guaranty, since it is well-settled that contractual interests of that type would fall within the scope of 11 U.S.C. § 541(a)(1). *See, e.g., Krystal Cadillac Oldsmobile GMC Truck, Inc. v. General Motors Corp. (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.),* 142 F.3d 631, 635 (3d Cir. 1998) (debtor's rights under franchise

---

1. No RDO call had been outstanding at the time of the October distribution, and while one was made in January 2000, Exxon claimed only a portion of the January distribution.

2. We note that Exxon has at no point in this case opposed the relief sought by the debtor, nor has it appealed the decision of the bankruptcy court.

agreement constituted property of the estate under 11 U.S.C. § 541(a)(1)). The Orndorff Group have not provided any authority for their novel suggestion that one could not contractually separate the right to payment of the dividends on a stock from the ownership of the stock itself for the purposes of classification under the Bankruptcy Code.

The Orndorff Group further claims that this case is essentially an action for private contract damages outside the core jurisdiction of the bankruptcy court. This argument similarly lacks merit, as even if the debtor's right to the net distributions could be characterized as contractual in nature, that right is not subject to any contractual dispute here.

 We also hold that this Court has no jurisdiction over the Orndorff Group's purported appeal of the bankruptcy court's finding that the Orndorff Group violated the automatic stay, because such finding did not constitute a final judgment. The bankruptcy court specifically denied summary judgment to the debtor on that claim on the ground that material issues of fact remained on the issue of damages. "[F]or a bankruptcy court order to be final within the meaning of § 158(d), the order ... must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 776 (2d Cir.1992); *see also Calcasieu Marine Nat. Bank v. Morrell (In re Morrell)*, 880 F.2d 855 (5th Cir .1989) (finding bankruptcy court judgment not appealable after creditor held to have violated automatic stay but before assessment of damages). The Orndorff Group's suggestion that this jurisdictional problem could be waived because it was "not raised or objected to by Debtor Appellee before the District Court" is clearly incorrect. "[E]very federal appellate court has a spe-

cial obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quotation marks and citations omitted).

We have considered the Orndorff Group's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed. We have also carefully reviewed the debtor's motion for damages and double costs filed in connection with this appeal and hereby deny it. While we agree that certain of the arguments made by the defendants-appellants in this appeal are frivolous, we do not believe that the appeal as a whole can be characterized as frivolous.