

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# Vanderbeek v. Barefoot

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1493

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Vanderbeek v. Barefoot" (2007). *2007 Decisions.* Paper 1344.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1344

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1493
_____

JEFFREY A. VANDERBEEK;
RONALD J. DEL MAURO

Appellants

v.

BRIAN BAREFOOT; BRIDGEWATER SPORTS;
N FORK BANK, f/k/a Trust Co NJ;
PORTER BRIDGE LOAN;
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-03605)
District Judge:  Honorable Stanley R. Chesler
_____

Argued February 15, 2007
Before:  SMITH and FISHER, *Circuit Judges*, and DOWD,[*] *District Judge*.

(Filed:  April 5, 2007)

_____

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Stuart Komrower (Argued)
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street, Court Plaza North
P.O. Box 800
Hackensack, NJ  07601
        *Attorney for Appellants*

Samuel Feldman (Argued)
Orloff, Lowenbach, Stifelman & Siegel
101 Eisenhower Parkway
Roseland, NJ  07068-1082
        *Attorney for Appellee,*
        *Brian Barefoot*

Michael J. Palumbo
Carol A. Lafond
LeBoeuf, Lamb, Greene & MacRae
125 West 55th Street
New York, NY  10019
        *Attorneys for Appellee,*
        *N Fork Bank*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Jeffrey A. Vanderbeek and Ronald J. Del Mauro, individually and on behalf of Arena Equity Partners, L.L.C. ("Arena") (collectively "Appellants"), appeal the District Court's determination that the liquidated damages clause included in the Asset Purchase Agreement ("APA") that Arena entered into with Bridgewater Sports Arena, L.P. ("Bridgewater") was enforceable.  The Appellants claim that the liquidated damages clause was unenforceable under New Jersey law because it was unreasonable at the time

2

of contract formation and at the time of breach.  For the following reasons, we will affirm

the District Court's order.

I.

As we write only for the parties, who are familiar with the factual context and the

procedural history of the case, we will set forth only those facts necessary to our analysis.

This is a breach of contract case that arises in the context of bankruptcy

proceedings.  The Debtor, Bridgewater, filed a voluntary petition for relief under

Chapter 11 of the Bankruptcy Code in August 2003.  Bridgewater owned and operated a

family entertainment center in Bridgewater, New Jersey, the value of which was listed as

$8.575 million on Bridgewater's Chapter 11 Petition.

In April 2004, Bridgewater and its general partner (John C. Sabo) entered into a

Consensual Plan Proponent Agreement ("Consensual Plan") with Arena.  Under the

Consensual Plan, the parties agreed to enter into an APA, where Arena would fund

Bridgewater's reorganization plan which would provide for Arena to purchase most of

Bridgewater's assets.[1]

Bridgewater filed a reorganization plan in the Bankruptcy Court, seeking approval

of the APA.[2]  The Bankruptcy Court approved the reorganization plan in August 2004,

---

[1]Vanderbeek, Del Mauro, Stephen Gruhin ("Gruhin"), and Mitchell Berlant ("Berlant") were all members of Arena, and executed the Consensual Plan on behalf of Arena.

[2]The reorganization plan indicated that the next highest bid for Bridgewater's assets was $5.75 million.  Apparently, because Arena participated in the preparation of

3

and scheduled a confirmation hearing for September 30, 2004. The purchase price under the APA for Bridgewater's property and assets was not to exceed $7 million.[3] The closing date, as indicated in the reorganization plan and the APA, was to occur between three and thirty days after the confirmation order was finalized by the Bankruptcy Court.

There were extensive negotiations regarding the liquidated damages clause. Bridgewater's counsel prepared and sent a draft APA to Arena. The draft required a $250,000 deposit, but did not include a liquidated damages clause. Under the proposed terms, Bridgewater could seek damages if Arena breached. Two months later, Arena responded with a redlined draft that deleted Bridgewater's proposed damages clause and replaced it with a liquidated damages clause. Bridgewater did not want the liquidated damages clause, but Arena explained that the clause was necessary in order for the agreement to go forward. Bridgewater conceded, but proposed that any liquidated damages clause should be for an amount between $250,000 and $750,000. Arena, according to its attorney, believed that the $250,000 deposit amount was more than fair. The APA, which was executed on November 11, 2004, and was governed by New Jersey law, ultimately included a liquidated damages clause which provided that Arena's $250,000 deposit was Bridgewater's sole remedy if Arena breached.

_____

the reorganization plan, it knew this information. Arena does not deny such knowledge.

[3]The price was based in part on the fact that Sabo and Bridgewater's manager were to receive an equity interest in Arena.

After some delays due to internal conflict among Arena's members, the confirmation hearing was held and the Bankruptcy Court entered the order confirming the reorganization plan on November 23, 2004. The APA designated December 10, 2004, as the closing date and December 31, 2004, as the termination date (subject to any adjournments to the closing date), and stated that the APA could be terminated by any party if the closing did not occur on or before the termination date. However, the termination date could be extended by the seller and purchaser in writing.

Arena requested an extension of the closing date until January 7, 2005. Bridgewater refused to consent to the extension. However, as allowed under the APA, Arena unilaterally adjourned the closing until December 30, 2004. A few days before December 30, 2004, Arena requested another adjournment.

Additionally, some of Arena's members (Gruhin and Berlant) informed Bridgewater on December 28, 2004, that DJD Amusements L.L.C. ("DJD") was interested in purchasing Bridgewater's assets. Bridgewater's counsel began discussions with DJD regarding the possibility of DJD becoming a "back-up funder." DJD made a formal offer on December 30, 2004. The terms of the offer were the same as those stated in the APA with Arena. DJD also paid Bridgewater a $1 million deposit on December 31, 2004.[4] On January 5, 2005, Bridgewater filed a motion for approval of DJD as a replacement plan funder. Bridgewater informed the court that DJD was prepared to close,

_____

[4]DJD's offer was set to expire on January 12, 2005.

and had been prepared to close since December 31, 2004. Additionally, Bridgewater indicated that its creditors were exerting pressure to make the distributions contemplated under the reorganization plan immediately. The Bankruptcy Court entered the order on January 6, 2005, and set a January 18, 2005 return date.

Bridgewater also amended the APA with Arena to extend the termination date to January 6, 2005. On January 6, Vanderbeek and Berlant contacted Bridgewater's counsel to request an extension until January 14, 2005.[5] On January 7, 2005, the Bankruptcy Court held a telephone conference in which it indicated "that if Arena did not close by January 18, 2005, the [c]ourt would entertain competitive bidding for a purchaser to become the Plan Funder." Arena did not close by January 18, 2005, but Bridgewater's counsel requested a one-day adjournment at the request of Arena, which the court granted, adjourning the hearing date to January 24, 2005. At the January 24 hearing, the Bankruptcy Court explained that there were now three options: (1) approve a closing with Arena, (2) authorize auction of the property, or (3) convert the case to Chapter 7. Vanderbeek and Del Mauro's counsel indicated that their clients were ready to close on behalf of Arena, but not until the resolution of some additional internal issues. The

---

[5]Vanderbeek and Berlant explained that if Arena failed to close on January 14, 2005, they would request that the Bankruptcy Court go forward with the auction on January 18, 2005. Vanderbeek and Berlant stated their intention to compete with DJD for plan funder status. Additionally, as proof of his intention to close as Arena or himself, Vanderbeek deposited the balance of the purchase price into a trust account. Bridgewater requested the adjournment during the telephone conference on January 7, 2005, based on the depositing of the funds. The Bankruptcy Court granted the adjournment.

Bankruptcy Court then held that because Arena had not closed, Arena's rights under the APA were terminated.

Immediately after this decision, the Bankruptcy Court held an auction, at which DJD was the only bidder. The court awarded plan funder status to DJD after it made its opening bid of $8.1 million. The sale was closed that day, and Bridgewater made partial distribution to its creditors. The court also indicated that the status of Arena's $250,000 deposit would be addressed at another time.

Brian Barefoot ("Barefoot"), one of Bridgewater's creditors and an Appellee in this case, made a motion on February 4, 2005, requesting that the Bankruptcy Court direct Bridgewater to disburse the $250,000 deposit to its creditors in accordance with the reorganization plan.[6] Vanderbeek and Del Mauro filed an objection and a cross-motion, individually and on behalf of Arena, seeking an order directing Bridgewater to return the deposit. Barefoot and another of Bridgewater's creditors filed opposition motions to the cross-motions.

After considering the circumstances surrounding the formation of the APA and the inclusion of the liquidated damages clause in the APA, the Bankruptcy Court determined that the clause was reasonable at the time of formation of the contract and at the time of breach. Therefore, the Bankruptcy Court granted Barefoot's motion and ordered the

---

[6]The Appellees in this case are Barefoot, Bridgewater, North Fork Bank f/k/a The Trust Company of New Jersey, Porter Bridge Loan Company, Inc., and the Official Committee of Unsecured Creditors.

7

distribution of the $250,000 to Bridgewater's creditors.[7] The Appellants appealed to the District Court, which concluded that the liquidated damages clause was reasonable and enforceable under New Jersey law. The Appellants then filed this appeal.

## II.

We have jurisdiction over this case pursuant to 28 U.S.C. § 158(d). Our review of the enforceability of a liquidated damages clause is de novo as it is a question of law. *See In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir. 1998); *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 110 (N.J. 1994). We review findings of fact under the clearly erroneous standard. *In re Krystal*, 142 F.3d at 635.

On appeal, the Appellants claim that the District Court and the Bankruptcy Court erred by finding that the liquidated damages clause was enforceable. They claim that the clause was not enforceable because it was not reasonable at the time of formation nor at the time of the breach. Under New Jersey law, according to the Appellants, a liquidated damages clause must be reasonable at both points in time.

The general rule in New Jersey is that liquidated damages clauses are presumptively reasonable in commercial transactions where the parties are sophisticated and have equal bargaining power. *Wasserman's*, 645 A.2d at 108. The opponent bears the burden of proving unreasonableness. "[T]he party challenging a stipulated damages clause 'must establish that its application amounts to a penalty.'" *Id.* (citation omitted).

---

[7]At oral argument, counsel informed the Court that the deposit is being held in escrow by Appellees' counsel.

In *Wasserman's Inc. v. Township of Middletown*, the New Jersey Supreme Court explained that reasonableness is the standard used to determine whether a liquidated damages clause is enforceable. 645 A.2d at 106. The uncertainty or difficulty in assessing the damages is not a separate test, but rather is an element to be considered in making a determination regarding reasonableness. *Id.* at 107. New Jersey courts consider the intent of the parties when determining the reasonableness of such a clause, but regardless of what the parties intend, the clause will not be enforceable if it really is a penalty. *Id.*

In *Wasserman's*, the court adopted the "modern trend" as to what point in time the clause needs to be reasonable. The "modern trend" is to determine the reasonableness at either "the time of contract formation or at the time of the breach." *Id.* (citation omitted). "Actual damages . . . reflect on the reasonableness of the parties' prediction of the damages. 'If the damages provided for in the contract are grossly disproportionate to the actual harm sustained, courts usually conclude that the parties' original expectations were unreasonable.'" *Id.* (quoting *Wassenaar v. Panos*, 331 N.W.2d 357, 364 (Wis. 1983)). The court also adopted the approach of the Restatement (Second) of Contracts which provides that:

> [d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy.

9

*Id.* at 108 (quoting Restatement (Second) of Contracts § 356(1)).[8]

In *MetLife Capital Financial Corp. v. Washington Avenue Associates L.P.*, 732 A.2d 493 (N.J. 1999), the New Jersey Supreme Court further explained the proper analysis for determining the enforceability of a liquidated damages clause. "Treating reasonableness 'as the touchstone,' [the court] noted [in *Wasserman's*] that the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause. [It] did not, however, consider any of those factors dispositive, and remanded the case . . . ." *Id.* at 499 (quoting *Wasserman's*, 645 A.2d at 106-11). The court classified the analysis as a totality of the circumstances test – whether a clause is reasonable under the totality of the circumstances.

*Wasserman's* may be interpreted as establishing that a liquidated damages clause is enforceable if it is reasonable at either the time of formation or at the time of breach. *See, e.g.*, *Wasserman's*, 645 A.2d at 107; *Naporano Assocs. v. B&P Builders*, 706 A.2d 1123, 1128 (N.J. Super. 1998). However, we need not decide that issue today because the clause in this case was reasonable at both points in time. Based on the facts of this case, the clause was reasonable at the time of contract formation. The parties are both sophisticated business organizations, and they received the advice of counsel. They had

[8]The comment to the Restatement provides "if, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable." Restatement (Second) of Contracts § 356, cmt. b.

10

similar bargaining power, although Arena was in a better bargaining position because it knew that the next highest bid that Bridgewater had received was $1.25 million less than Arena's offer. Additionally, the actual damages were hard to determine at the time the contract was formed. Although other bids had been made, it was not clear what actual damages Bridgewater would suffer if Arena breached the APA. It could have been forced to accept the next highest bid, if those bids even remained open. The fact that the liquidated damages were only $250,000, as explained by Arena's counsel, was "more than fair." As the lower courts indicated this was approximately 3.5% of the purchase price. Further, it was clearly the intent of the parties to make the forfeiture of the deposit a liquidated damages clause. Arena was trying to limit its potential loss if it could not go through with the deal, and Bridgewater was trying to protect itself in case Arena breached. Therefore, based on the totality of the circumstances at the time the contract was formed, the liquidated damages clause was reasonable.

The liquidated damages clause was also reasonable at the time of the breach.[9]

Some of the factors remain the same as they did at the time the contract was formed – the intention of the parties and the bargaining power. Arena seems to suggest that it no longer had equal bargaining power with Bridgewater because DJD had entered the picture. However, Bridgewater, like Arena, was bound by the terms of the APA, and could not simply get out of the agreement without recourse. DJD's offer had expired, and it was no longer required to buy or bid. Because no one was bound to bid or buy at a set price, the potential damages remained unclear at the time of the breach.

The New Jersey Supreme Court has not ruled on whether a liquidated damages clause in a commercial contract is reasonable when the non-breaching party suffers no actual damages.[10] However, the *MetLife* court indicated that no one factor is dispositive

---

[9]The parties dispute when the breach actually occurred: the Appellees claim that it was on January 14 when Arena failed to close the deal, and the Appellants claim that it was January 24 when the Bankruptcy Court terminated the APA. In actuality, it does not matter which date is used. DJD's offer expired on January 12, 2005, and therefore it was no longer obligated to buy the property on either date. Additionally, Vanderbeek had already transferred the remaining amount of the purchase price into escrow on January 7, 2005, which evidenced his intention to close the deal. However, based on the terms of the Consensual Plan it appears that Vanderbeek may have been prohibited from bidding. The Consensual Plan provided that if Arena breached the agreement, Arena and its members could not bid on the property in an auction. Therefore, at either time, no third-party was bound to bid on or purchase the property.

[10]The Appellants rely on *Nohe v. Roblyn Development Corporation*, 686 A.2d 382 (N.J. Super. 1997). *Nohe* dealt with a contract for the sale of a residential property. *Id.* at 383. The New Jersey Superior Court held that the liquidated damages clause was not enforceable because the sellers suffered no actual damages and the stipulated amount was a substantial sum. *Id.* at 385.
We are not bound by lower state court decisions and we do not find *Nohe*

12

in the totality of the circumstances analysis. *MetLife*, 732 A.2d at 499. We believe that the New Jersey Supreme Court would find the liquidated damages clause in this case reasonable, in spite of the fact that DJD paid over $1 million more than the purchase price under the APA with Arena, based on the totality of the circumstances. First of all, the language of the comment to section 356 of the Restatement (Second) provides that when there are no actual losses, a liquidated damages clause "fixing a substantial sum as damages is unenforceable." Restatement (Second) of Contracts § 356, cmt. b. The amount of the deposit, $250,000, is not a substantial sum in light of the fact that the purchase price was $7 million; it is only about 3.5% of the purchase price. Additionally, Bridgewater incurred legal fees as a result of the breach. Therefore, contrary to the Appellants' argument, Bridgewater did suffer some actual losses. The $250,000 Bridgewater will receive if the clause is enforced is thus not a total windfall as it is mitigated by the attorney's fees Bridgewater incurred.[11] Under the totality of the circumstances, even though Bridgewater received a higher purchase price for its assets,

---

persuasive. *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 303-04 n.1 (3d Cir. 2003). The New Jersey Supreme Court has made it clear that its law regarding liquidated damages applies to sophisticated business parties, and specifically limited its holding in *Wasserman's* to that context. *Wasserman's*, 645 A.2d at 108. Therefore, it does not appear that *Wasserman's* applies to consumer contract cases, such as the contract in *Nohe*.

[11]As the Bankruptcy Court explained, the creditors were also disadvantaged by the delays Arena caused. The record demonstrated that the creditors lost the time value of the monetary distributions they were to receive.

13

we hold that the clause was reasonable at the time of the breach because the rest of the factors still favor enforceability.

## IV.

For the foregoing reasons, we will affirm the District Court's order enforcing the liquidated damages clause.

DOWD, *District Judge*, dissenting.

I respectfully dissent. In my view, the immediate subsequent windfall sale generating an additional 1.1 million dollars for the bankrupt, an increase of 15.7% over the failed transaction, would, under prevailing New Jersey case law precedent, require a judicial result contrary to the majority opinion.

In *MetLife Capital Financial Corp. v. Washington Ave. Associates, L.P.*, 732 A.2d 493 (N.J. 1999), the New Jersey Supreme Court succinctly summarized the state of the law in New Jersey with respect to the enforcement of stipulated damages provisions as it stated in part as follows:

> Historically, courts have closely scrutinized contract provisions that provided for the payment of specific damages upon breach. The need for close scrutiny arises from the possibility that stipulated damages clauses may constitute an oppressive penalty. Enforceable stipulated damages clauses are referred to as "liquidated damages," while unenforceable provisions are labeled "penalties."

*Id.* at 498 (citations omitted).

The *MetLife* court was considering whether a five percent late fee for payments on a mortgage represented reasonable liquidated damages. In the process, it cited

14

*Wasserman's Inc. v. Middletown*, 645 A.2d 100, 137 N.J. 238, 249-54 (1994), which

addressed the proper method for evaluating stipulated damages clauses, and then it stated:

> Applying the principle that "[t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances," we address the validity of the five percent late fee included in this contract. *Wassenaar v. Panos*, 111 Wis.2d 518, 331 N.W.2d 357, 361 (1983). We find that under that "reasonableness" test, the five percent late fee is a valid measure of liquidated damages.

*MetLife*, 732 A.2d at 499.

Clearly, under prevailing New Jersey law, the issue is the reasonableness of the

enforcement of the stipulated damages clause under the totality of the circumstances.

Those circumstances include the windfall to the bankrupt of 1.1 million dollars in the

subsequent sale against a stipulated damages clause calling for the payment of $250,000

in the event of a breach. Applying the test of reasonableness under the totality of the

circumstances, it is my view that the New Jersey Supreme Court would, as a matter of

law, declare that the forfeiture of the $250,000 constituted a penalty and was

unenforceable.

I would reverse and direct that final judgment be entered for the appellant Jeffrey

A. Vanderbeek, requiring the return of the $250,000 payment.[12]

---

[12]The fact that the appellee incurred legal costs in defending the forfeiture of the $250,000 is not relevant. In my view, counsel for Brian Barefoot should have reached the same conclusion and agreed to the repayment of the $250,000 to the appellant.

15